Argued and submitted May 18, ballot title certified as modified May 26, 1989

GLERUM,
*Petitioners,*

*v.*

ROBERTS,
*Respondent.*

(SC S36147)

774 P2d 1093

John DiLorenzo, Jr., Portland, argued the cause for petitioners. With him on the petition was O'Connell & Goyak, Portland.

Janet A. Metcalf, Assistant Attorney General, Salem, argued the cause for respondent. With her on the answering memorandum were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Carson, Jones, Gillette, Van Hoomissen and Fadeley, Justices.

CARSON, J.

## CARSON, J.

This original proceeding concerns a challenge to a ballot title prepared by the Legislative Assembly for a measure to be submitted to the people for approval or rejection at a special election to be held on June 27, 1989.

To submit the measure to the people, the legislature passed a resolution and a bill. The resolution, Senate Joint Resolution 8 (SJR 8), contains both a preamble and a proposed amendment to the Oregon Constitution. The bill, House Bill 2371 (Or Laws 1989, ch 113), sets forth the procedures for placing SJR 8 on the ballot.[1] The bill also contains a ballot title prepared by the legislature. ORS 250.075(1).

The proposed constitutional amendment, as it will appear on the ballot, is as follows:

**"Be It Resolved by the Legislative Assembly of the State of Oregon:**

**"PARAGRAPH 1.** The Oregon Constitution is amended by creating a new section 7 to be added to and made a part of Article VIII and to read:

**"SECTION 7.** (1) Notwithstanding subsection (2) of section 5 of this Article or any other provision of this Constitution, the State Land Board shall not authorize the sale or export of timber from lands described in section 2 of this Article unless such timber will be processed in Oregon. The limitation on sale or export in this subsection shall not apply to species, grades or quantities of timber which may be found by the State Land Board to be surplus to domestic needs.

"(2) Notwithstanding any prior agreements or other provisions of law or this Constitution, the Legislative Assembly shall not authorize the sale or export of timber from state lands other than those described in section 2 of this Article unless such timber will be processed in Oregon. The limitation on sale or export in this subsection shall not apply to species, grades or quantities of timber which may be found by the State Forester to be surplus to domestic needs.

"(3) This section first becomes operative when federal law is enacted allowing this state to exercise such authority or

---

[1] The bill also refers to an unrelated, proposed constitutional amendment that is not at issue in this case.

when a court or the Attorney General of this state determines that such authority lawfully may be exercised.

"**PARAGRAPH 2.** The amendment proposed by this resolution shall be submitted to the people for their approval or rejection at a special election held on the same date as the next election as provided by law."

By specific legislative direction, the preamble to SJR 8 (see Appendix A) will be printed in the Voters' Pamphlet. Or Laws 1989, ch 113, § 6. The Secretary of State is required to provide each county clerk with a certified statement of the measure, which also is to include the preamble. Or Laws 1989, ch 113, § 7.

The legislature directed that the procedure to challenge the ballot title was to be as provided in ORS 250.085.[2] Or Laws 1989, ch 113, § 3(3). That statute directs this court, upon challenge, to review the ballot title for substantial compliance with the requirements of ORS 250.035[3] and 250.039.[4]

In House Bill 2371 (Or Laws 1989, ch 113, § 3(2)), the legislature provided the following ballot title:

## "PROHIBITS SALE/EXPORT OF UNPROCESSED LOGS FROM STATE LANDS

"QUESTION: Shall Oregon Constitution ban sale for export of unprocessed logs from state lands?

---

[2] The legislature shortened the statutory time period for challenges from 10 to 5 calendar days, however.

[3] ORS 250.035 provides:

"(1) The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect.

"(2) The ballot title shall not resemble, so far as probably to create confusion, any title previously filed for a measure to be submitted at that election."

[4] ORS 250.039 provides:

"For all measures, the Secretary of State by rule shall designate a test of readability and adopt a standard of minimum readability for a ballot title. The ballot title shall comply with the standard to the fullest extent practicable consistent with the requirements of impartiality, conciseness and accuracy."

Petitioners make no specific challenge under ORS 250.039.

"EXPLANATION: Legislative referral. Amends Oregon Constitution, Article VIII, by adding new language. Prohibits State Land Board from selling for export logs from state-owned lands unless those logs are processed in Oregon. Prohibits Legislative Assembly from granting authority to sell for export logs from other state lands not under State Land Board jurisdiction, notwithstanding prior agreements or statutes. This measure goes into effect when either Congress, a court or Oregon's Attorney General affirms the state's right to exercise this authority."

Dissatisfied with the legislatively drafted ballot title, petitioners seek a different ballot title, ORS 250.085(1), contending that the legislature's ballot title is "insufficient and misleading."

In 1985, the legislature changed the test to be used upon review from one determining whether the ballot title is insufficient, not concise, or unfair to the present test of substantial compliance with ORS 250.035 and 250.039. *Reed v. Roberts,* 304 Or 649, 652, 748 P2d 542 (1988). In 1987, the legislature amended ORS 250.035 to its present form. *See Reed v. Roberts, supra,* 304 Or at 653. It is clear from the arguments in the petition that petitioners assert the correct test, *viz.,* that the legislatively prepared ballot title does not substantially comply with ORS 250.035.

ORS 250.035 establishes three requirements for a ballot title:

(1) A *caption* that reasonably identifies the subject of the measure;

(2) A *question* that plainly phrases the chief purpose of the measure; and

(3) A concise and impartial statement (*i.e.,* an *explanation*) that summarizes the measure and its major effect.

*Reed v. Roberts, supra,* 304 Or at 652-53. With the scope of review and the requirements of ORS 250.035 in mind, we turn to petitioners' arguments about the Caption, Question, and Explanation of the ballot title prepared by the legislature.

## THE CAPTION
### (Subject of the Measure)

1.     The major dissatisfaction petitioners have with the Caption is the substitution of the word "logs" for the word "timber" used in the measure. This dissatisfaction recurs in the Question and the Explanation. An examination of the proposed constitutional amendment demonstrates the validity of petitioners' dissatisfaction.

The Attorney General, appearing in behalf of the respondent, Secretary of State, acknowledges the word switch, but contends that the Caption nevertheless is in substantial compliance with the requirement to "reasonably identif[y] the subject of the measure." ORS 250.035(1)(a). The Attorney General points to the preamble (where both the words "logs" and "timber" are used in the first "whereas" clause but only the word "timber" is used in the second "whereas" clause) and, further, argues that the word "logs" is a permissible substitution for the measure's use of the word "timber."

The Attorney General is incorrect. The statutory comparison required of this court is the substantial compliance of the ballot title with ORS 250.035. That statute dictates an identification of the subject of the measure, not the measure's preamble. Where, as here, the measure consistently refers to "timber" rather than "logs," it is not permissible to reach beyond the unambiguous subject ("timber") chosen by the legislature and substitute a word that appears in the accompanying preamble, no part of which will be a part of the constitutional amendment, should it receive a favorable vote by the electorate.

The Attorney General relies upon "Webster's Third New International Dictionary (1966)" for the definition of a "log" as a "bulky piece or length of unshaped timber; esp: a tree trunk or a length of a trunk or branch trimmed and ready for sawing." With an eye on the same dictionary, the Attorney General acknowledges that "timber" is a word of varying meaning referring to " 'growing trees or their wood,' to 'wood used for or suitable for building,' and to 'something that is made of wood.' " Pointing to the Forest Products Harvest Tax definition for "timber," the Attorney General quotes "timber" as meaning " 'all logs which can be measured in board feet * * *.' " See ORS 321.005(12).

What seems apparent in comparing the definitions of the two words is that "timber" has a much broader meaning than "logs." "Logs" may be "timber," but "timber" covers much more than "logs." This conclusion is supported by the statute cited by the Attorney General. The statute, in its entirety, reads: " 'Timber' means all logs which can be measured in board feet and other forest products as determined by [Department of Revenue] rule." ORS 321.005(12). Restated: " 'Timber' means * * * logs * * * and other forest products." Obviously, the statute does not settle the issue, but it is clear to us that "timber" means much more than "logs." The dictionary definitions suggest the same.

■ A second complaint raised by petitioners is that the measure does not prohibit the sale or export of *unprocessed* logs, but prohibits the sale or export of timber from state lands unless processed *in Oregon.* Petitioners are correct. This complaint is directed at both the Caption and the Question. The Explanation, as written by the legislature, does not suffer the same defect. With a slight change in the Caption and the Question, petitioners' concern can be met.

The proposed constitutional amendment prohibits the sale or export of timber from state lands unless such timber will be processed in Oregon. With the foregoing in mind, we modify the legislatively drafted caption to read:

PROHIBITS SELLING/EXPORTING
TIMBER FROM STATE LANDS
UNLESS OREGON PROCESSED

QUESTION
(Chief Purpose of Measure)

■ ORS 250.035(1)(b) sets forth the requirements for the Question. The Question must plainly phrase the measure's "chief purpose." "Chief purpose" thus suggests the most significant aim or end which a measure is designed to bring about. *Reed v. Roberts, supra,* 304 Or at 654. Previously, we have noted that the "chief purpose" requirement suggests that it should be determined in a manner analogous to legislative determination. To us, that meant the following: "[T]he proposed measure should be reviewed for its unambiguous language and the context in which it was drafted and for statements made by its sponsors. Context would include the

legal context, as well as the more particular circumstances under which a measure is drafted." *Id.* at 654-55. (Footnote omitted.)

The "logs" versus "timber" substitution is again before us. Here, the context in which the measure was drafted and the statements of the sponsors (the legislature) might well suggest validity to the substitution of "logs" for "timber." But to so conclude, we would have to ignore totally the unambiguous and consistent use of the word "timber," and not the use of the word "logs," in the measure. This we cannot do.

As claimed by petitioners, a second failure of the ballot title to track the measure appears in the substitution of the words "sale for export" [ballot title] for "sale or export" [measure]. The measure states "sale or export" and language to that effect should be used.

Here, as in the Caption, we modify the legislatively drafted Question to read:

QUESTION:   Shall Oregon Constitution be amended to prohibit sale or export of timber from state lands unless processed in Oregon?

## EXPLANATION
### (Summary and Major Effect)

■      The Explanation must summarize "the measure and its major effect." ORS 250.035(1)(c). Apart from word-substitution defects discussed above, petitioners point to the failure of the Explanation prepared by the legislature to mention the measure's exemption on the sale or export prohibition for particular species, grades, or quantities of timber when the State Land Board or the State Forester determines such timber to be surplus to domestic needs.

An exemption to the sale-or-export prohibition is not necessarily a major effect. However, it does soften the otherwise total prohibition, at least to the extent any timber qualifies as surplus. The exemption should be mentioned in the Explanation to summarize the measure properly.

■      Petitioners also contend that the legislatively prepared Explanation, because of the use of the verb "affirms," incorrectly suggests a present power in Oregon to prohibit the sale or export. They also contend that the Explanation does

not make clear what triggers the operation of the measure should it be passed by the electorate. We disagree. The Explanation prepared by the legislature substantially complies with ORS 250.035(1)(c) in this regard.

With the foregoing in mind, and with minor word changes to meet the 85-word limit, we modify the legislatively prepared Explanation to read as follows:

EXPLANATION: Legislative referral. Amends Oregon Constitution, Article VIII, by adding new language. Prohibits State Land Board from authorizing sale or export of timber from state-owned lands unless that timber is processed in Oregon. Prohibits Legislative Assembly from authorizing timber sale or export from other state lands not under State Land Board jurisdiction notwithstanding prior agreements or statutes unless processed in Oregon. Permits exception for timber declared surplus. This measure effective when Congress, a court, or Oregon's Attorney General affirms state's right to exercise this authority.

In summary, we certify the following ballot title to the Secretary of State:

## PROHIBITS SELLING/EXPORTING TIMBER FROM STATE LANDS UNLESS OREGON PROCESSED

QUESTION: Shall Oregon Constitution be amended to prohibit sale or export of timber from state lands unless processed in Oregon?

EXPLANATION: Legislative referral. Amends Oregon Constitution, Article VIII, by adding new language. Prohibits State Land Board from authorizing sale or export of timber from state-owned lands unless that timber is processed in Oregon. Prohibits Legislative Assembly from authorizing timber sale or export from other state lands not under State Land Board jurisdiction notwithstanding prior agreements or statutes unless processed in Oregon. Permits exception for timber declared surplus. This measure effective when Congress, a court, or Oregon's Attorney General affirms state's right to exercise this authority.

Ballot title certified as modified.

## APPENDIX A

"Whereas the Legislative Assembly and the people of the State of Oregon find that:

"(1)   In recognition of the importance of maintaining employment in local mills, community stability and in the face of timber supply shortages, beginning in 1968 and each year thereafter Congress has enacted restrictions on log exports requiring domestic processing on timber sold and harvested from federal lands in the west;

"(2)   In recognition of the importance of maintaining employment in local mills and community stability, in 1961 the Oregon Legislative Assembly passed a bill requiring all timber sold from Board of Forestry and Common School lands to be 'primarily processed' in the United States. In 1963, the law was amended to authorize the Department of Forestry to issue permits allowing the export of unprocessed logs harvested from state-owned lands under certain limited circumstances. This provision was repealed in 1981;

"(3)   Oregon's Attorneys General have questioned the constitutionality of state export bans since 1961. The state continued to restrict exports until 1984 when, following a Supreme Court decision finding a state log export ban in Alaska (*South Central Timber Development, Inc. v. Wunnicke*) to be unconstitutional, enforcement of Oregon's log export ban stopped;

"(4)   Although they remain in state timber sale contracts and in Oregon statutes, Oregon's log export restrictions are not enforced. Log exports of state timber have steadily grown and in 1987 nearly 40 percent of all state timber sold was purchased by log exporting firms;

"(5)   In 1988 Congress considered legislation to give states the right to limit exports of state-owned timber consistent with the historic Congressional direction on federal public lands. Despite strong support from western states no final action was taken;

"(6)   In the federal budget submitted by President Reagan for fiscal year 1990, removal of log export restrictions from public lands was proposed. Impacts are estimated to be 600 million board feet of additional log exports at a cost of 2,500 direct timber industry jobs;

"(7)   Oregon's timber supply is increasingly inadequate to meet current mill capacity; and

"(8)   When a state exports logs instead of lumber, it is

functioning similar to the developing nations of the world that rely on their unprocessed natural resources as a primary means of generating foreign exchange revenue. By exporting raw material, we lost the value added by manufacturing, the jobs involved directly in the manufacturing process, and the related spin-off jobs that also add to our economy; and

"Whereas in order to assure that timber harvested from state and federal public lands in Oregon is processed in Oregon, the Legislative Assembly, other state-wide officials and state agencies shall use all legal means necessary to:

"(1) Demand that the federal policy continue the existing Congressional prohibition of sales of unprocessed timber from federal lands for export;

"(2) Support and assure passage of federal legislation authorizing states to require in-state processing of timber severed from state-owned lands; and

"(3) Insist that the United States Secretary of the Interior and the United States Secretary of Agriculture vigorously administer and enforce the existing prohibition of sales of unprocessed timber from federal lands; and

"Whereas within 10 days after the effective date of the amendment proposed by this resolution, the Secretary of State shall transmit copies of this resolution, including the voter referendum results to the President of the United States, the United States Department of Agriculture, the United States Department of the Interior, the President of the United States Senate, the Speaker of the United States House of Representatives, each member of Congress and the governors and legislature of the other 49 states; now, therefore
* * * ."