Argued and submitted November 21, 1989, ballot title certified as modified
January 25, 1990

# DERAS,
*Petitioner,*

*v.*

# ROBERTS,
*Respondent.*

(SC S36595)

# PAULUS et al,
*Petitioners,*

*v.*

# ROBERTS,
*Respondent.*

(SC S36604)

# REMINGTON et al,
*Petitioners,*

*v.*

# ROBERTS,
*Respondent.*

(SC S36605)
(Cases Consolidated for Argument and Opinion)

785 P2d 1045

Warren C. Deras, Portland, argued the cause and filed the petition for petitioner, Warren C. Deras, *pro se.*

Paul R. Romain, Portland, argued the cause and filed the petition for petitioners, Norma Paulus and Mike Burton. With him on the petition was Preston, Thorgrimson, Ellis and Holman, Portland.

Leslie M. Roberts, Portland, argued the cause and filed the petition for petitioners Stevie Remington and The American Civil Liberties Union of Oregon, Inc.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause and filed the answering memoranda. With him on the memoranda was Dave Frohnmayer, Attorney General, Salem.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

This original proceeding consolidates three challenges to a certified ballot title for a proposed initiative measure to amend the Oregon Constitution. If approved by the voters, the amendment would exempt laws regulating the financing of election campaigns from the provisions of Article I, sections 8 and 26, of the Oregon Constitution. We modify the certified ballot title.

The proposed initiative measure provides:

"Be It Enacted by the People of the State of Oregon:

"*PARAGRAPH 1.*   Section 8, Article II of the Constitution of the State of Oregon is amended to read:

"Sec. 8. (1)   The Legislative Assembly shall enact laws to support the privilege of free suffrage, prescribing the manner of regulating, and conducting elections, and prohibiting under adequate penalties, all undue influence therein, from power, bribery, tumult, and other improper conduct. [-]

"*(2)   Notwithstanding Article I, section 8 and Article I, section 26, of this Constitution, the people, as provided in this Constitution, or the Legislative Assembly may enact laws regulating the financing of election campaigns.*"[1]

The Attorney General certified the following ballot title to the Secretary of State pursuant to ORS 250.067(2):

"EXEMPTS ELECTION FINANCE LAWS
FROM CONSTITUTIONAL FREE
EXPRESSION, ASSEMBLY PROTECTIONS

"*Question*:   Shall election campaign finance laws be exempted from the Oregon Constitution's prohibitions against laws restraining free expression or free assembly?

"*Explanation*:   Amends state constitution. The measure would allow voters and the legislature to enact laws regulating

---

[1] Article I, section 8, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right. -"

Article I, section 26, provides:

"No law shall be passed restraining any of the inhabitants of the State from assembling together in a peaceable manner to consult for their common good; nor from instructing their Representatives; nor from applying to the Legislature for redress of greviances [*sic*]. -"

election campaign financing that currently would be prohibited by the state constitution's free expression and free association provisions. Exempts laws that regulate the financing of election campaigns from the effect of Article I, section 8, which prohibits laws that restrain free expression of opinion. Also exempts such laws from Article I, section 26, which prohibits laws that restrain free assembly or access to legislative representatives or the legislature."

All petitioners timely submitted written comments on the Attorney General's draft ballot title; therefore, they may seek a different title. ORS 250.085(2) and (5).[2] We review the certified ballot title for substantial compliance with the requirements of ORS 250.035[3] and ORS 250.039, *infra*. ORS 250.085(4).[4] Each petitioner contends that the certified ballot title fails to comply with ORS 250.035 in various respects. We shall not identify or discuss at length contentions that are not

---

[2] ORS 250.085 provides in part:

"(2) Any elector dissatisfied with a ballot title for an initiated or referred measure by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. The petition shall state the reasons the title filed with the Secretary of State does not substantially comply with the requirements of ORS 250.035 and 250.039.

"* * * * *

"(5) When reviewing a title prepared by the Attorney General, the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the argument concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

[3] ORS 250.035 provides:

"(1) The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect.

"(2) The ballot title shall not resemble, so far as probably [*sic*] to create confusion, any title previously filed for a measure to be submitted at that election."

[4] The power and duty of this court in reviewing a certified ballot title are subject to statute. We are not empowered to change a proposed ballot title because we are of the opinion that we can write a "better" title. On the other hand, we have a duty to correct a proposed ballot title that fails to satisfy statutory requirements. *See Priestley v. Paulus,* 287 Or 141, 145, 597 P2d 829 (1979); *Allison v. Paulus,* 280 Or 197, 199, 570 P2d 368 (1977).

well taken. *Nelson v. Roberts,* 308 Or 417, 421 n 1, 781 P2d 344 (1989).

Petitioner Deras argues that the certified ballot title's caption and question, which state that the measure "exempts" certain laws from "protections" or "prohibitions * * * restraining," use "confusing double or triple negatives which really mean — and should say — simply that such laws will be allowed to do what the restrictions prohibit, *i.e.,* limit free speech and assembly." He also argues that the words "free speech" or "freedom of expression" should be substituted for "free expression" because the former phrases are better understood by most voters and "free speech" is the term commonly used by the press for this right; that the phrase "Bill of Rights" should be used somewhere in the ballot title in place of the word "constitution" to more readily identify the nature of the proposed changes to be made by the measure; that deleting the word "campaign" from the caption in the Attorney General's draft ballot title was "error" because the measure is aimed at the campaigns which precede elections, not elections themselves; that the reference to "finance" throughout the ballot title is misleading because it suggests that only *money* transfers would be affected if the measure is approved whereas, in fact, other transactions also would be affected; and that the statement summarizing the measure does not sufficiently describe the full panoply of rights of expression that enactment of the measure would affect. He asks that the summary separately mention every constitutional right that would be "implicated" by the measure.[5]

Petitioners Paulus and Burton contend that the caption of the certified ballot title does not reasonably identify

---

[5] Deras proposes the following ballot title:

"ALLOWS ELECTION CAMPAIGN LAWS
TO LIMIT FREE SPEECH AND ASSEMBLY

"*Question*: Shall laws that regulate financing of election campaigns be allowed to restrict or prohibit free speech and assembly?

"*Summary*: Amends the Oregon Constitution. Allows laws on the financing of election campaigns to violate some rights now protected by the Oregon Bill of Rights. Any or all of these rights could be restrained by such laws: the right to free expression of opinion; the right to speak, write or print freely on any subject; the right of Oregonians to meet peaceably to talk about any topic they choose; the right to instruct elected officials; the right to ask the legislature to correct wrongs."

the subject of the measure, which they assert is "to give the people of the state, and the Legislative Assembly, the authority to enact laws regulating the financing of election campaigns."[6] They assert that:

> "[I]t is questionable now whether the people and the Legislature have this authority. The means used to insure that laws may be enacted regulating election financing are to make clear that the existing constitutional provisions found in Article I, section 8, and Article I, section 26, of the Constitution do not prohibit such regulation."

They also argue that the certified ballot title's question does not plainly phrase the chief purpose of the measure as required by ORS 250.035(1)(b). They assert that the chief *purpose* of the measure is "to allow the voters and the Legislature to enact campaign finance laws," rather than to exempt these laws from the free expression and assembly protections of the Oregon Constitution. They concede, however, that the major *effect* of the proposed initiative will be to exempt such laws from Article I, sections 8 and 26.[7]

   Petitioners Remington and the American Civil Liberties Union of Oregon, Inc. (ACLU) argue that the Attorney General's caption does not reasonably identify the subject of the measure, which, they assert, is "an amendment of the Oregon Constitution to allow certain kinds of future legislation which [are] now absolutely prohibited." They also argue that the Attorney General's caption fails to adequately inform

---

[6] Petitioner Deras argues that the proposed Paulus/Burton *caption* (*see* n 7, *infra*) could lead voters to the incorrect conclusion that the Legislature currently lacks any authority to regulate political campaigns. *See Deras v. Myers*, 272 Or 47, 52 n 3, 535 P2d 541 (1975) (state legislation is valid unless contrary to constitutional limitation).

[7] Paulus and Burton propose the following ballot title:

   "AUTHORIZES VOTERS AND THE LEGISLATURE
   TO ENACT CAMPAIGN FINANCE LAWS

   "*Question*: Shall the Oregon Constitution be amended to allow voters and the Legislature to enact campaign finance laws?

   "*Explanation*: Amends State Constitution. The measure would allow voters and the Legislature to enact laws regulating election campaign financing that currently would be prohibited by the State Constitution's free expression and free association provisions. Exempts laws that regulate financing of election campaigns from the effect of Article I, section 8, which prohibits laws that restrain free expression of opinion. Also exempts such laws from Article I, section 26, which prohibits laws that restrain free assembly or access to legislative representatives or the Legislature."

voters that the proposed "exemption" will, as they assert, restrain free speech and free assembly. They argue that the Attorney General's question "obfuscates the issue" by addressing the measure's purpose in terms of "exemptions from prohibitions against restraints." They assert that the purpose of the measure is "to allow what the constitution would otherwise prohibit." Finally, they argue that the Attorney General's statement fails to express fully the measure's "major effect," which they assert is to "permit election finance laws that limit free speech, freedom of association and assembly, and freedom to complain to elected officials." They seek a certified ballot title that affirmatively states that the measure would permit enactment of election finance laws restricting rights that are now protected by Article I, sections 8 and 26, of the Oregon Constitution.[8]

The Attorney General responds that the certified ballot title is substantially modeled after a ballot title approved by this court in *Clark v. Paulus,* 295 Or 673, 669 P2d 794 (1983), and that, in any event, all the title's component parts satisfy the requirements of ORS 250.035. With the foregoing in mind, we proceed to consider each of the certified ballot title's components.

## CAPTION

■  The caption must reasonably identify the subject of the measure in not more than ten words. ORS 250.035(1)(a). Here, the subject of the measure is the exemption of "laws regulating the financing of election campaigns" from the prohibitions of Article I, sections 8 and 26 of the Oregon Constitution. The Attorney General's caption reads:

---

[8] Remington and the ACLU propose the following ballot title:

"AMENDS CONSTITUTION TO LET ELECTION
FINANCE LAWS RESTRAIN SPEECH, ASSEMBLY

"*Question*: Shall election finance laws be permitted to restrict the right to speak, assemble peacefully, and complain to elected representatives.

"*Statement*: Amends the Constitution. Allows election finance laws to limit free speech, assembly, and the right to petition government, without regard to the State Constitution. The State Constitution now bars all laws which limit expression of opinion about any topic. It now guarantees Oregonians the right to assemble peacefully, and to complain to elected representatives. The proposed amendment would allow any campaign finance law to override these State rights."

"EXEMPTS ELECTION FINANCE LAWS
FROM CONSTITUTIONAL FREE EXPRESSION,
ASSEMBLY PROTECTION."

We agree with petitioner Deras that the measure is not aimed at "elections," but, rather, at the campaigns which precede them. We also agree that the word "protections" may be confusing in light of the words "prohibitions" and "restraining" which follow in the Attorney General's question. Accordingly, we modify the caption to read:

"EXEMPTS CAMPAIGN FINANCE LAWS
FROM CONSTITUTION'S FREE EXPRESSION,
ASSEMBLY GUARANTEES"[9]

QUESTION

■    The question must plainly phrase the chief purpose[10] of the measure in not more than twenty words so than an affirmative response to the question corresponds to an affirmative vote on the measure. ORS 250.035(1)(b). Here, the chief purpose of the measure is to exempt election campaign finance laws from the prohibitions of Article I, sections 8 and 26. The question is whether those prohibitions should be relaxed to allow the enactment of election campaign finance laws that presently would violate those state Bill of Rights prohibitions. The Attorney General's question reads:

> *Question*:   Shall election campaign finance laws be exempted from the Oregon Constitution's prohibitions against laws restraining free expression or free assembly."

We find that the Attorney General's question plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on

---

[9] Article I, section 26, prohibits restraint of free assembly *and* restraint "from instructing their Representatives; [and] * * * from applying to the Legislature for redress of greviances [*sic*]." The proposed initiative appears to have as much to do with the second focus of section 26 as with the first. No petitioner has raised this issue, however.

[10] "Chief purpose" is the most significant aim or end which a measure is designed to bring about. The "chief purpose" requirement should be determined in a manner analogous to legislative determination. The proposed measure should be reviewed for its unambiguous language and the context in which it was drafted and for statements made by its sponsors. Context would include the legal context, as well as the more particular circumstances under which a measure is drafted. *Glerum v. Roberts*, 308 Or 22, 28, 744 P2d 1093 (1989); *Reed v. Roberts*, 304 Or 649, 654-55, 748 P2d 542 (1988).

the measure. Nevertheless, for "readability" reasons, which will be explained *infra,* we modify the question to read:

> *"Question*: Shall election campaign finance laws be exempt from the state constitution's guarantees of free speech, assembly, and access to legislators?"

## STATEMENT

The statement must concisely and impartially summarize the measure and its major effect in not more than 85 words. ORS 250.035(1)(c). The Attorney General's statement reads:

> *"Explanation*: Amends state constitution. The measure would allow voters and the legislature to enact laws regulating election campaign financing that currently would be prohibited by the state constitution's free expression and free association provisions. Exempts laws that regulate the financing of election campaigns from the effect of Article I, section 8, which prohibits laws that restrain free expression of opinion. Also exempts such laws from Article I, section 26, which prohibits laws that restrain free assembly or access to legislative representatives or the legislature."

After considering each of petitioners' objections to specific portions of the Attorney General's statement, we conclude that it substantially complies with the requirements of ORS 250.035(1)(c).

## FLESCH FORMULA FOR READABILITY

We next consider petitioner Deras's contention that the certified ballot title fails to comply with the ORS 250.039 test of readability.[11]

---

[11] ORS 250.039 provides:

> "For all measures, the Secretary of State by rule shall designate a test of readability and adopt a standard of minimum readability for a ballot title. The ballot title shall comply with the standard to the fullest extent practicably consistent with the requirements of impartiality, conciseness and accuracy."

The Secretary of State has designated the "Flesch Formula for Readability" as the test of readability and has adopted as the minimum standard of readability a Reading Ease Score of not less than 60 on a scale between 0 (practically unreadable) and 100 (easy for any literate person). OAR 165-14-045 *et seq. See* R. Flesch; How to Write, Speak and Think More Effectively, (The New American Library, Inc., Publishers) (1960); R. Flesch; How to Write Plain English: A Book for Lawyers & Consumers (Harper & Row, Publishers) (1979).

Under the Flesch formula, a ballot title must achieve a "reading ease" score of not less than 60, unless this court can affirmatively find no ballot title could both achieve that score and, at the same time, meet "the needs of impartiality, conciseness and accuracy." OAR 165-14-045(2). The goal of the readability test is plain and easily understood language. Application of the Flesch Formula to the Attorney General's certified ballot title here results in a reading ease score of 22. That means the language is "difficult to very-difficult" to read and understand. *See* n 11, *supra.* During oral argument, respondent conceded with admirable candor that the certified ballot title "flunks" the Flesch test.

With the foregoing in mind and in order to improve the certified ballot title's overall "readability," we modify the Attorney General's statement to read:

> "*SUMMARY*: This measure would amend the state constitution. It would allow the voters and the state legislature to pass laws that place limits on campaign contributions. It would exempt such laws from sections 8 and 26 of the state Bill of Rights. Those sections forbid laws that restrict the rights of the people to speak, write, and print freely; to assemble; and to have access to the state legislature and its members. The state Supreme Court has said that these sections ban limits on campaign contributions."

Application of the Flesch Formula to the modified ballot title results in a reading ease score of 60.

In summary, we certify the following ballot title to the Secretary of State:

### "EXEMPTS CAMPAIGN FINANCE LAWS FROM CONSTITUTION'S FREE EXPRESSION, ASSEMBLY GUARANTEES

> "*QUESTION*: Shall election campaign finance laws be exempt from the state constitution's guarantees of free speech, assembly, and access to legislators?

> "*SUMMARY*: This measure would amend the state constitution. It would allow the voters and the state legislature to pass laws that place limits on campaign contributions. It would exempt such laws from sections 8 and 26 of the state Bill of Rights. Those sections forbid laws that restrict the

rights of the people to speak, write, and print freely; to assemble; and to have access to the state legislature and its members. The state Supreme Court has said that these sections ban limits on campaign contributions."

Ballot title certified as modified.