Argued and submitted November 21, 1989, ballot title certified as modified
March 6, 1990

# DERAS,
*Petitioner,*

*v.*

# ROBERTS,
*Respondent.*

(SC S36596)

# PAULUS et al,
*Petitioners,*

*v.*

# ROBERTS,
*Respondent.*

(SC S36603)

# REMINGTON et al,
*Petitioners,*

*v.*

# ROBERTS,
*Respondent.*

(SC S36606)
(Cases Consolidated for Opinion)

788 P2d 987

Warren C. Deras, *pro se,* Portland, argued the cause and filed the petition for petitioner, Warren C. Deras.

Paul R. Romain, Portland, argued the cause and filed the petition for petitioners, Norma Paulus and Mike Burton. With him on the petition was Preston, Thorgrimson, Ellis and Holman, Portland.

Leslie M. Roberts, Portland, argued the cause and filed the petition for petitioners Stevie Remington and The American Civil Liberties Union of Oregon, Inc.

John A. Reuling, Jr., Assistant Attorney General, Salem, argued the cause and filed the answering memoranda. With him on the memoranda was Dave Frohnmayer, Attorney General, and Virginia Linder, Solicitor General, Salem.

Before Peterson, Chief Justice, and Linde,* Carson, Jones, Gillette, Van Hoomissen and Fadeley, Justices.

VAN HOOMISSEN, J.

---

* Linde, J., retired January 30, 1990.

## VAN HOOMISSEN, J.

This original proceeding consolidates three challenges to a certified ballot title for a proposed initiative measure relating to cash and "in-kind" contributions and other forms of support for political candidates seeking state and local office. The proposed measure, which is lengthy and complex, amends existing laws and creates new laws affecting the voters' pamphlet (ORS 251.065), campaign finance regulation (ORS 260.005, 260.083 and 260.345), and the political contribution tax credit (ORS 316.102). We modify the certified ballot title.

## I.

Pursuant to ORS 250.067(2), the Attorney General certified the following ballot title to the Secretary of State:

"LIMITS ELECTION CAMPAIGN CONTRIBUTIONS
FOR STATE AND LOCAL OFFICE CANDIDATES

"*QUESTION:* Shall state law limit cash and in-kind contributions, for state, local office candidates, to candidates and principal campaign committees?

"*EXPLANATION:* Amends, enacts laws. Limits cash and in-kind contributions, per election, to: $1,000 for state office candidates, $500 for local office candidates, $200 for each political committee. Limits total yearly contributions for such candidates and political committees to $20,000. Solicited endorsements count as in-kind contributions. Prohibits accepting excess amounts. Prohibits such candidates from contributing to other such candidates, political committees. Violators of limits may be fined up to $500 or three times contribution; knowing violators, $1,000 or five times contribution."

All petitioners timely submitted written comments on the Attorney General's draft ballot title. They therefore may seek a different title. ORS 250.085(2) and (5).[1]

---

[1] ORS 250.085 provides in part:

"(2) Any elector dissatisfied with a ballot title for an initiated or referred measure certified by the Attorney General and who timely submitted written comments on the draft ballot title may petition the Supreme Court seeking a different title. * * *

"* * * * *

"(5) When reviewing a title prepared by the Attorney General, the court shall not consider arguments concerning the ballot title not presented in writing to the Secretary of State unless the court determines that the arguments concerns language added to or removed from the draft title after expiration of the comment period provided in ORS 250.067."

■     We review the certified ballot title for substantial compliance with the requirements of ORS 250.035[2] and ORS 250.039, *infra.* ORS 250.085(4). The power and duty of this court in reviewing a certified ballot title are subject to statute. We are not empowered to change a proposed ballot title solely because we are of the opinion that we can write a "better" title. On the other hand, we have a duty to correct a proposed ballot title that fails to satisfy statutory requirements. *Priestley v. Paulus,* 287 Or 141, 145, 597 P2d 829 (1979); *Allison v. Paulus,* 280 Or 197, 199, 570 P2d 368 (1977). We shall not identify or discuss at length contentions that are not well taken. *Deras v. Roberts,* 309 Or 250, 254-55, 785 P2d 1045 (1989).

## II.

Each petitioner contends that the certified ballot title fails to comply with ORS 250.035 in some respect. Petitioner Deras argues that the ballot title incorrectly treats the measure solely as a limit on *cash* contributions because the measure also limits or prohibits many other traditional political activities; that the Summary does not disclose that civil penalties may be imposed for violations without a jury trial; and that the Summary does not adequately cover the broadness of the definition of "in-kind" contributions. Deras also argues that the ballot title fails to comply with the readability standard of ORS 250.039 and OAR 165-14-045 *et seq. See Deras v. Roberts, supra,* 309 Or at 259. Finally, Deras notes that the Summary inaccurately states that the contribution limit for *all* state office candidates is $1,000, whereas, in fact, the limit for some state offices (judicial and legislative offices) is $500.[3]

---

[2] ORS 250.035 provides:

"(1) The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect.

"(2) The ballot title shall not resemble, so far as probable to create confusion, any title previously filed for a measure to be submitted at that election."

[3] Deras proposes the following ballot title:

Petitioners Paulus and Burton argue only that the certified ballot title's Summary inaccurately states that a solicited endorsement is counted as an "in-kind" contribution. They ask that the phrase "Solicited endorsements count as in-kind contributions" be stricken from the Summary.

Petitioners Remington and the American Civil Liberties Union of Oregon, Inc. (ACLU) argue that the contribution limits stated in the Summary may be read incorrectly as limits on how much a *candidate may accept,* rather than limits on how much one *donor may give* to one candidate or to all candidates. Remington and the ACLU also argue that the Summary should mention the possibilities of forfeiture of a candidate's right to appear in the voters' pamphlet for violation of the new law, and of repeal of the political contribution tax credit for certain political committees. Remington and the ACLU agree with petitioner Deras that the certified ballot title is deficient in that it fails adequately to convey that the limits extend beyond cash contributions or to convey the broadness of the definition of "in-kind" contributions.[4]

Respondent concedes that the initiative measure limits more than cash contributions and that this fact should be

---

"LIMITS OR BANS SOME POLITICAL ACTIONS,
INCLUDING CONTRIBUTIONS AND ENDORSEMENTS

"*QUESTION:* Shall state law limit or ban some political actions, including endorsements of and contributions to state and local candidates?

"*SUMMARY:* Bans most contributions between campaign groups. Limits as 'contributions' costs of most newspaper and other endorsements, some campaign spending by others, and gifts to candidates. Limits contributions to some State candidates to $1,000 per election; limit to other State and local candidates is $500 per election; limit to political parties and most groups is $200 per year. All contributions a person or group (except a political party) makes may not exceed $20,000 per year. Secretary of State may fine violators without a jury trial."

[4] Remington and the ACLU propose the following ballot title:

"LIMITS RIGHT TO SUPPORT OR OPPOSE
CANDIDATES AND POLITICAL GROUPS

"*QUESTION:* Should law limit people's right to support or oppose candidates for office, and to support political groups.

"*STATEMENT:* Prohibits giving more than $500 to most state or local candidates per election. Limit for other state offices is $1,000. Prohibits giving more than $200 yearly to group that endorses or otherwise supports candidates. Limits can apply to value of property used to help candidate or group, to costs of publishing endorsement, to expense of opposing candidate. Only political parties may give candidates more than $20,000, total. Forbids contributions from campaign funds. Prohibits accepting excess contributions. Violators fined, may be barred from voter's pamphlet. Makes other changes."

reflected in the ballot title, but she argues that the measure's principal effect and purpose is to limit contributions. She also argues that, because existing election finance reporting laws and regulations already provide for imposition of civil penalties without a jury trial for violations, reference to trial without a jury for violations of the new law is unnecessary. Respondent concedes that Deras has identified an error in the contribution limit for certain state offices, and that Remington and the ACLU are correct in arguing that the contribution limits in the Summary may be read incorrectly as limits on how much a candidate may accept, rather than limits on how much one donor may give to one candidate or to all candidates. Respondent agrees with Remington and the ACLU that, if space permits, information about forfeiture of the right to appear in the voters' pamphlet and the repeal of the political contributions tax credit for certain political committees should be included in the Summary. Concerning the scope of the term "in-kind" contribution, and specifically whether a "solicited endorsement" constitutes an "in-kind" contribution, respondent asserts that she is "unable to determine the reach of Section 8 of the measure, which provides for 'independent' expenditures but defines them very narrowly, with everything else becoming an 'in-kind' contribution."[5]

## III.

## THE CAPTION

■     The Caption must reasonably identify the subject of the measure in not more than ten words. ORS 250.035(1)(a). Here, the subject of the measure is to place limits on cash and

---

[5] Acknowledging that the certified ballot title must be revised, respondent proposes the following alternative:

"POLITICAL CAMPAIGN CONTRIBUTION
AND SUPPORT LIMITATION

"*QUESTION:* Shall state law limit cash, in-kind contributions and other support of candidates for state and local offices?

"*EXPLANATION:* Bans campaign gifts by any giver of more than $1,000 each election to any candidate for named state office, $500 to local or other state office candidate. Other described aid counts as 'in-kind' gift toward limit. Also limits gifts to groups endorsing or supporting candidate(s). Yearly gift limit $20,000 to all candidates and committees. Gifts can't be passed to another candidate. Exempts gifts to national office candidates, gifts by political party committees. Violators subject to civil fines. Candidates may be barred from voters' pamphlet."

"in-kind" contributions, and other forms of support for political candidates for state and local offices. The certified Caption reads:

"LIMITS ELECTION CAMPAIGN CONTRIBUTIONS
FOR STATE AND LOCAL OFFICE CANDIDATES"

We agree with petitioners Deras, Remington and the ACLU that the quoted Caption incorrectly treats the measure solely as a limit on *cash* contributions. Indeed, respondent concedes the point.

We are not satisfied with any of the alternative Captions submitted by petitioners because none seems to focus on the subject of the measure as we understand it. Accordingly, we modify the Caption to read:

"LIMITS AMOUNT OF CONTRIBUTIONS AND
OTHER SUPPORT TO POLITICAL CANDIDATES"

## THE QUESTION

■ ■  The Question must plainly phrase the "chief purpose" of the measure in not more than twenty words so that an affirmative response to the Question corresponds to an affirmative vote on the measure. ORS 250.035(1)(b). The chief purpose of a measure is the most significant aim or end which a measure is designed to bring about. The chief purpose requirement is determined in a manner analogous to legislative determination. The proposed measure is reviewed for its unambiguous language and the context in which it was drafted and for statements made by its sponsors. Context includes the legal context, as well as the more particular circumstances under which a measure is drafted. *Glerum v. Roberts,* 308 Or 22, 28, 744 P2d 1093 (1989); *Reed v. Roberts,* 304 Or 649, 654-55, 748 P2d 542 (1988).

■  From these sources, we conclude that the chief purpose of the measure is to limit cash and "in-kind" contributions and other forms of support to political candidates for state and local offices and to impose dollar limits on the total contributions a person may make to all state and local candidates and political committees.

The certified Question reads:

*"QUESTION:* Shall state law limit cash and in-kind contributions, for state, local office candidates, to candidates and principal campaign committees?"

Petitioners Paulus and Burton, two of the measure's three chief sponsors, assert that the certified Question adequately states the measure's chief purpose. Nevertheless, in response to the other petitioners' arguments and respondent's concessions, we conclude that the certified Question must be revised. Again, we are not satisfied with any of the alternative Questions submitted by petitioners because none seems plainly to phrase the chief purpose of the measure as we understand it. Accordingly, we modify the Question to read:

*"QUESTION:* Shall law limit amount of contributions and other support persons may give to state and local candidates or committees?"

As modified, the Question plainly phrases within the statutory word limitations the chief purpose of the measure so that an affirmative response to the Question corresponds to an affirmative vote on the measure.

## THE SUMMARY[6]

■ The Summary must concisely and impartially summarize the measure and its major effect in not more than 85 words. ORS 250.035(1)(c). The certified Summary reads:

*"EXPLANATION:* Amends, enacts laws. Limits cash and in-kind contributions, per election, to: $1,000 for state office candidates, $500 for local office candidates, $200 for each political committee. Limits total yearly contributions for such candidates and political committees to $20,000. Solicited endorsements count as in-kind contributions. Prohibits accepting excess amounts. Prohibits such candidates from contributing to other such candidates, political committees. Violators of limits may be fined up to $500 or three times contribution; knowing violators, $1,000 or five times contribution."

---

[6] Until recently, the words required by ORS 250.035(1)(c) have been titled "Explanation" in the Attorney General's proposed ballot titles. This court's opinions variously have titled them "Explanation," "Statement," or "Summary." We have commented on the problem with terminology. *See Sajo v. Roberts,* 304 Or 414, 419 n 2, 746 P2d 214 (1987); *Ferry v. Paulus,* 297 Or 70, 76 n 4, 682 P2d 262 (1984). As a matter of statutory interpretation and to ensure consistency, this court adopts the term "Summary."

After considering each of petitioners' objections to specific portions of the certified Summary as well as respondent's concessions, we conclude that the certified Summary does not substantially comply with the requirements of ORS 250.035(1)(c).

As requested by petitioners Paulus and Burton, we strike the phrase "Solicited endorsements count as 'in-kind' contributions."

We agree with respondent that the reach of Section 8 of the measure as applied to solicited endorsements is speculative. For the same reason, we reject the other petitioners' language designed to cover their interpretations of "in-kind" contributions. The examples they offer may or may not be found to be "in-kind" contributions in the future.

We accept the Deras suggestion that the Summary should accurately reflect that there are two contribution limits for different state offices, and Remington and the ACLU's suggestions that the summary should mention the possibility that a candidate's violation of the new law may result in forfeiture of the candidate's right to appear in the voters' pamphlet and the possibility of repeal of the political contribution tax credit for certain political committees.

We modify the Summary to read:

*"SUMMARY:* Limits cash and "in-kind" contributions and other support to candidates for election to state and local offices: $1,000 per donor to each candidate each election for named offices; $500 for other state and local offices. Limits donor's contributions and support to $20,000 yearly for all candidates and groups. No limit on gifts from political parties or to federal campaigns. Candidate may not give own campaign funds to other candidates. Provides civil fines. Violators may be barred from voters' pamphlet. Certain political committee tax credits repealed."

As modified, the Summary accommodates within the statutory word limitations all of petitioners' well-taken complaints and respondents' concessions.

## IV.

## READABILITY

We next consider petitioner Deras's contention that the certified ballot title fails to comply with the readability

standard of ORS 250.039 and OAR 165-14-045 *et seq.*[7]

■      Under the Flesch formula, a ballot title must achieve a "reading ease" score of not less than 60, unless this court can affirmatively find no ballot title could both achieve that score and, at the same time, meet "the needs of impartiality, conciseness and accuracy." OAR 165-14-045(2). The Flesch formula places a premium on short words and short sentences; its goal is plain and easily understood language.

■      Deras states that attaining a score of 60 here may be impossible because this measure is complicated and requires repeated use of multi-syllable words such as "contributions," "candidates" and "political." The reference to several dollar amounts also drives the score down. The Flesch reading ease score for the certified ballot title is 9, indicating that the title is "very difficult to read and understand."[8] Deras's proposed ballot title would result in a reading ease score of 34. Our modified ballot title results in a reading ease score of 38, which we find to be the maximum score that can reasonably be achieved in this case consistent with the requirements of impartiality, conciseness and accuracy. ORS 250.039.

## V.

In summary, we certify the following ballot title to the Secretary of State:

"LIMITS AMOUNT OF CONTRIBUTIONS AND
OTHER SUPPORT TO POLITICAL CANDIDATES"

*"QUESTION:*   Shall law limit amount of contributions and other support persons may give to state and local candidates or committees?"

---

[7] ORS 250.039 provides:

"For all measures, the Secretary of State by rule shall designate a test of readability and adopt a standard of minimum readability for a ballot title. The ballot title shall comply with the standard to the fullest extent practicable consistent with the requirements of impartiality, conciseness and accuracy."

The Secretary of State had designated the "Flesch Formula for Readability" as the test of readability and has adopted as the minimum standard of readability a Reading Ease Score of not less than 60 on a scale between 0 (practically unreadable) and 100 (easy for any literate person). OAR 165-14-045 *et seq. See* R. Flesch; How to Write, Speak and Think More Effectively, (the New American Library, Inc., Publishers) (1960); R. Flesch; How to Write Plain English: A Book for Lawyers & Consumers (Harper & Row, Publishers) (1979).

[8] Professor Flesch concludes that a score below 30 will be easy for a college graduate to read, a score between 30 and 50 easy for a college student, and a score between 50 and 60 easy for a high school student.

*"SUMMARY:*  Limits cash and "in-kind" contributions and other support to candidates for election to state and local offices: $1,000 per donor to each candidate each election for named offices; $500 for other state and local offices. Limits donor contributions and support to $20,000 yearly for all candidates and groups. No limit on gifts from political parties or to federal campaigns. Candidate may not give own campaign funds to other candidates. Provides civil fines. Violators may be barred from voters' pamphlet. Certain political committee tax credits repealed."

Ballot title certified as modified.

Pursuant to ORAP 11.30(10) and notwithstanding ORAP 9.25(1), this certified ballot title will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment 10 days from the date of this decision, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator within seven days of the date of this decision. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration. If the court denies the petition, the Administrator shall issue the appellate judgment the next judicial day after denial of the petition(s) for reconsideration.