Argued and submitted December 13, 1994, ballot title certified as modified
May 18, 1995

Alice DALE
and Robert Crumpton,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
*Respondent.*

(SC S41780)

894 P2d 462

James S. Coon, of Royce, Swanson, Thomas & Coon, Portland argued the cause for petitioners. With him on the petition was Paul B. Gamson, of Smith, Gamson, Diamond & Olney, Portland.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memorandum were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

FADELEY, J.

Graber, J., filed a dissenting opinion in which Carson, C. J., joined.

## FADELEY, J.

In this ballot title review case, petitioners challenge a ballot title proposed for use with an initiative measure. The text of the measure is printed as an appendix hereto. The standards to be applied by this court to the present challenge are spelled out by statutes that in summary provide:

"ORS 250.035(1)(a) requires that a ballot title contain a 'caption of not more than 10 words which reasonably identifies the subject of the measure.' ORS 250.035(1)(b) requires that a ballot title also contain a 'question of not more than 20 words which plainly phrases the chief purpose of the measure.' Finally, ORS 250.035(1)(c) requires that a ballot title contain a 'concise and impartial statement of not more than 85 words summarizing the measure and its major effect.' " *Crumpton v. Kulongoski*, 319 Or 82, 84-85, 873 P2d 314 (1994) (footnote omitted).

"This court reviews ballot titles for 'substantial compliance with the requirements of ORS 250.035 and 250.039.' ORS 250.085(5)." *Id.* at 84.

The ballot title proposed[1] by the Attorney General for use with the measure in the present case provides:

"AMENDS CONSTITUTION:
PUBLIC EMPLOYEES NEED NOT
SHARE UNION REPRESENTATION COSTS

"QUESTION: Shall constitution ban requiring public employees to join unions, pay dues or representation costs, and forbid taking dues from wages?

"SUMMARY: Amends state constitution. Bans requiring public employees to join union or to pay dues or representation costs. Bans union security clauses. Bans taking public employee union dues from wages. Union must collect dues straight from members. Union memberships expire each year. Members may renew membership, or may leave union at any time. Union each year must tell members of all political use of dues. Members may opt not to pay part of dues used for such purposes, or to direct such contributions as they choose."

---

[1] This opinion labels as "proposed" the title certified to the Secretary of State by the Attorney General to avoid confusion with the "certified title" that this court produces at the end of a ballot title challenge proceeding.

## THE CAPTION

There is no controversy or challenge in this case about the proposed Caption. We therefore certify that Caption.

## THE QUESTION

Petitioners contend that the proposed Question does not plainly state the chief purpose of the measure as required by ORS 250.035(1)(b). They argue:

"The major effect of this measure is to prevent mandatory fair share payments. * * * [T]he only purpose and only effect of this measure [when combined with existing statutes and constitutional protections] is to allow public employees to receive union representation at no cost. * * *

"* * * * *

"* * * This chief purpose and major effect should be stated * * *, not concealed behind language which misstates existing law."

It is clear that the measure prohibits fair share agreements,[2] which are agreements mandating that members of a bargaining unit who are not union members pay a pro rata share of the costs for union representation services concerning employment terms and conditions for everyone within that employment unit.[3] Petitioners argue that the statement in the measure at subparagraph (a) of section (10) that "[i]t is not the primary purpose of this provision that public employees receive union representation at no cost" does not overcome the fact that the measure, if adopted, would entitle public employees who do not join a union to

---

[2] The measure uses the term "fair share." ORS 243.650(10) defines the term:

" 'Fair-share agreement' means an agreement between the public employer and the recognized or certified bargaining representative of public employees whereby employees who are not members of the employee organization are required to make an in-lieu-of-dues payment to an employee organization except as provided in ORS 243.666."

[3] *See Elvin v. OPEU*, 313 Or 165, 167, 832 P2d 36 (1992) (under Public Employees Collective Bargaining Act, ORS 243.650 to 243.782, a union that is an exclusive representative of a bargaining unit "must represent all public employees fairly," including nonunion members).

become "free riders"[4] by securing bargaining and representation services without cost.

The Attorney General in response relies on the ballot title certified in *Crumpton*, which he essentially resurrected for use in this measure. However, there are substantial and significant differences between this measure and that addressed in *Crumpton*.

Petitioners here contend that the proposed Question and Summary imply that existing law "requires" union membership and payment of union dues by all public employees against their will. Petitioners' argument in the present case was not addressed or decided in *Crumpton*.

■    In *Ransom v. Roberts*, 309 Or 654, 663 n 12, 791 P2d 489 (1990), this court said that, in determining whether a ballot title question states the "chief purpose" of a measure,

> " '[c]hief purpose' suggests the most significant aim or end which a measure is designed to bring about. The 'chief purpose' requirement[] suggests that it should be determined in a manner analogous to legislative determination. The proposed measure should be reviewed for its unambiguous language and the context in which it was drafted and for statements made by its sponsors. Context would include the legal context, as well as the more particular circumstances under which a measure is drafted. *Glerum v. Roberts*, 308 Or 22, 28, 774 P2d 1093 (1989)."

Thus, this court reviews the words in a proposed question to determine, among other things, whether they distort the legal context of the measure and thereby misstate the most significant aim or end of the measure.

Two cases illustrate this principle. In *Christenson v. Paulus*, 297 Or 78, 80, 682 P2d 266 (1984), this court reviewed a ballot title for an initiative relating to land use and held that the proposed question was statutorily insufficient. That question asked, in part, "[s]hall * * * local comprehensive plans and zoning remain?" The court observed that, if the measure were adopted, what would "remain" was the

---

[4] The Supreme Court of the United States used that descriptive terminology in *Abood v. Detroit Board of Education*, 431 US 209, 222, 262, 97 S Ct 1782, 52 L Ed 2d 261 (1977).

existing legal *requirement* to plan and zone, not the plans and zoning already in place.

In *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 174, 777 P2d 406 (1989), this court reviewed a ballot title question that asked whether the constitution should "protect" a right of gathering initiative petition signatures in shopping centers. This court found that question to be misleading, because it erroneously implied that the law already recognized the described "right" and that the measure simply asked voters to confirm the existing state of the law. In fact, the existing state of the law was in dispute, and the measure was designed to *create*, not "protect," a constitutional right to petition in shopping malls. This court modified the question by replacing the word "protect" with "permit" in order to state correctly the measure's chief purpose. *Id.* at 175. The court also modified the language of the caption and summary to eliminate the same misleading inference.

■ The manner in which the phrase, "ban requiring," is used in the proposed Question presents difficulties that support petitioners' contention that the proposed ballot title misstates the existing law. The phrase "ban requiring" can be read to imply that compulsory *union membership* presently is *required* by law and that the measure bans that requirement. Use of the word "ban," without more, would be sufficient to signify that what the proposed measure would do is prevent compulsory membership. Adding the verb "requiring" creates the mischief. "Ban requiring" is not accurate unless there is a law "requiring." With respect to compulsory union membership, there is none. *See Whitty v. Roberts*, 309 Or 448, 452, 788 P2d 452 (1990) (rejecting argument that word "ban" must be used in ballot title where not all environmentally unsound packaging was "banned" by the measure, and thus use of "banned" would be inaccurate).

A ballot title should not misstate existing law, even by implication, and thereby create a spurious argument to support the measure's passage. *Fred Meyer, Inc.*, 308 Or at 174-75; *Christenson*, 297 Or at 80. Joining the word "requiring" with the word "ban" — while acceptable with respect to one of the subjects mentioned in the Question, *viz.*, paying a fair share of labor representation costs — may, when related to the subject of union memberships, mislead the voter into

believing that the law now requires union membership for all public employees. That is not accurate.[5] Accordingly, we modify the proposed Question as follows:

QUESTION: Shall constitution ban requiring public employees to pay share of union representation costs; prohibit mandatory union membership, payroll dues deduction?

## THE SUMMARY

■ In our view, the Summary of the contested ballot measure fails to comply with ORS 250.035(1)(c), because it fails to state the measure's major effects. It does not disclose that employees who are not members of the union, but who are members of the bargaining unit, will receive representation without cost. The parties agree that that effect is an important change from the present law. The phrase "ban requiring," which is used once again in the Summary, also should be limited in its scope for the reasons stated above. Accordingly, we modify the Summary by including this revised sentence:

Bans requiring nonunion public employees to share union representation costs; unions must represent such employees without charge.

The measure also prohibits payroll deduction of a member's dues, as noted above in the Question. We modify the Summary to state that effect.

The measure at subparagraph (f) of section (10) also declares that: "All expenditures not directly related to * * * bargaining or labor representation shall be considered political expenditures." The measure also would give each union member a right to prevent collection of funds for such expenditures. The measure also states that members of a union have the power to direct that an expenditure be made, in the name of each member, to a recipient chosen by that member. The Summary should state those major effects of the measure.

---

[5] As noted, use of the phrase — "ban requiring" — is accurate as to fair-share or union representation costs because such costs presently must be paid by nonmembers who receive the benefit of those expenditures. But no law requires anyone to join the union or pay union dues, *per se*, and that difference in statutory context requires a difference in phraseology.

As this court has stated:

"Defining the range of [instances where the new requirements of the measure will apply] is an integral part of the measure. The Summary must 'be worded so that voters will understand the *breadth of its impact.*' *Fred Meyer, Inc. v. Roberts*, 308 Or 169, 175, 777 P2d 406 (1989). (Emphasis added.)" *Sampson v. Roberts*, 309 Or 335, 339, 788 P2d 421 (1990).

*Accord, Deras v. Roberts*, 309 Or 410, 419, 788 P2d 987 (1990). We can comply with that rule by using the words of the measure itself to describe those major effects of the measure.

Applying that rule, and incorporating the other modifications noted above, we certify the following modified ballot title:

### AMENDS CONSTITUTION:
### PUBLIC EMPLOYEES NEED NOT
### SHARE UNION REPRESENTATION COSTS

QUESTION: Shall constitution ban requiring public employees to pay share of union representation costs; prohibit mandatory union membership, payroll dues deduction?

SUMMARY: Amends state constitution. Bans requiring nonunion public employees to share union representation costs; unions must represent such employees without charge. Prohibits compelling union membership and dues payment. Bans union security clauses. Bans payroll deduction of dues. Memberships expire each year, may be canceled at any time, or renewed annually. Union each year must tell members of all proposed uses of dues other than for bargaining or labor representation. Members may opt not to pay or may direct a different expenditure of such portion of dues.

Ballot title certified as modified. This decision takes effect as provided in ORAP 11.30(9).

# APPENDIX

### PUBLIC EMPLOYEE PROTECTION ACT

### AN ACT

WHEREAS public employees are as diverse in their political opinions as the rest of society, and should not be required to financially support political candidates, parties or agendas inconsistent with their personal views; to protect and preserve the rights of public employees to free political expression;

Be in Enacted by the People of the State of Oregon:

Paragraph 1. Notwithstanding any existing State or Federal laws, the Oregon Constitution is amended by creating new sections to be added and made a part of Article XV; the new sections, Sections 10, 11, and 12 shall read:

Section 10. (a) No public employee or applicant for a position with the state, local government, or any other taxing district or political subdivision of the state, shall be required or unduly pressured to join or otherwise be connected to, or pay dues, or contribute fair share, or pay fees or assessments to a public employee union, association, or similar organization for any reason. It is not the primary purpose of this provision that public employees receive union representation at no cost, but that public employees have the free choice to have limited association with labor unions or associations, or not be associated with such organizations at all.

(b) Public employees shall not be subject to any form of union security clause, or clauses that have the same or similar effect as union security clauses or fair share agreements.

(c) No public employee or applicant for a public sector job shall be discriminated against in any way because of affiliation or non-affiliation with a union.

(d) Membership in public employee unions, associations, or similar organizations shall automatically expire annually, but may be renewed by the employee each year. Public employees may sever such memberships at will.

(e) So as to maintain and preserve the voluntary nature of union or association membership, dues and any other moneys collected from public employees by their unions, associations, or similar organizations may only be collected directly from employees, not garnished or otherwise deducted from their paychecks, and not collected by means of an automatic account withdrawal agreement or similar mechanism.

(f) All public employee unions, associations, or similar organizations shall at the end of each calendar year provide each public employee from which dues, fees or assessments were collected during that year, a detailed, comprehensive, easily read report clearly stating each and all expenditures of dues, fees, or assessments, including in-kind contributions, for political purposes during that year. All expenditures not directly related to collective bargaining or labor representation shall be considered political expenditures.

(g) Public employees who join public employee unions, associations, or similar organizations may (1) elect to not pay the portion of dues, fees, assessments, or similar payments, which would be used for political purposes, or (2) specify the political party, candidate or committee to which the political portion of that employee's dues, fees, assessments or other moneys shall be made, which designation shall be binding upon the union, association, or similar organization, which immediately shall carry out such instruction(s), making the contribution(s) in the name of the employee.

Section 11. If any part or parts of Section 10 of this Article is held to be invalid when applied to public employees who are members of public employee unions, associations, or similar organizations at the time of implementation of this Act, the requirements and restrictions set forth in Section 10 shall continue in full force in regard to employees hired after implementation of this Act.

Section 12. SEVERABILITY. If any part of Sections 10 or 11 of this Article is held to be invalid, the remaining parts shall remain in full force and effect.

**GRABER, J.,** dissenting.

I would certify the ballot title prepared by the Attorney General and, accordingly, dissent.

The majority's ballot title may be "better" than the Attorney General's. The problem is that the Attorney General's ballot title complies substantially with the requirements of ORS 250.035. In other words, the statutorily required premise for modification of this ballot title is absent. This court is *required* to certify a title that complies substantially with ORS 250.035.[1] ORS 250.085(5).

The measure provides in part that the Oregon Constitution be amended to include this wording:

"No public employee * * * shall be required * * * to join or otherwise be connected to, or pay dues, or contribute fair share, or pay fees or assessments to a public employee union * * *."

There presently is no provision in the Oregon Constitution on that topic.

The Attorney General's Caption is:

"AMENDS CONSTITUTION:
PUBLIC EMPLOYEES NEED NOT
SHARE UNION REPRESENTATION COSTS"

The Attorney General's Question asks, in part:

"Shall constitution ban requiring public employees to join unions, pay dues or representation costs * * *?"

The Attorney General's Summary states, in part:

"Amends state constitution. Bans requiring public employees to join union or to pay dues or representation costs."

In my view, it takes the most strained of readings to say that the Attorney General's ballot title does *not* tell voters what the measure says and does.

Therefore, I respectfully dissent.

Carson, C. J., joins in this dissent.

---

[1] No challenge is made in this case under ORS 250.039.