483

Argued and submitted June 11, ballot title certified by the Attorney General approved and certified to the Secretary of State July 18, 1991

Scott L. HENDRICKS,
*Petitioner,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38069)

Warren C. DERAS,
*Petitioner,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38095)

Stevie REMINGTON,
*Petitioner,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38110)

(Cases Consolidated for Argument and Opinion.)

815 P2d 207

Charles F. Hinkle, of Stoel, Rives, Boley, Jones & Grey, Portland, argued the cause and filed the petition for petitioner Scott L. Hendricks.

Warren C. Deras, Portland, argued the cause and filed the petition *pro se.*

Leslie M. Roberts, of Josselson, Potter & Roberts, Portland, argued the cause and filed the petition for petitioner Stevie Remington.

Michael D. Reynolds, Assistant Solicitor General, Salem, waived appearances on behalf of respondent.

PER CURIAM

**PER CURIAM**

This proceeding concerns challenges to a ballot title for a proposed initiative measure. ORS 250.085(1). The ballot title certified by the Attorney General is set forth in the appendix. We have considered the challenges. The ballot title certified by the Attorney General is approved and certified to the Secretary of State. This decision shall become effective pursuant to ORAP 11.30(10).

## APPENDIX

### BALLOT TITLE CERTIFIED
### BY ATTORNEY GENERAL

AMENDS CONSTITUTION TO SAY THAT
LAWS MAY REGULATE CAMPAIGN FINANCING

QUESTION: Shall the Constitution be amended to say that laws may be adopted to regulate election campaign financing?

SUMMARY: This measure would amend the state constitution. The new language would read as follows: "The people, as provided in this Constitution, or the Legislative Assembly may enact laws regulating the financing of election campaigns." This language would be added to the section of the state constitution that now allows regulation of elections.

**GILLETTE, J.,** dissenting.

This is a case of statutory review of a ballot title certified to the Secretary of State by the Attorney General. The ballot title certified by the Attorney General merely quotes the initiative measure involved; the public is told nothing about the measure's major effect. The court today nonetheless approves that ballot title. Because I believe that the law requires both the Attorney General and this court to do more, I respectfully dissent.

Although some of the parties before us in this case have challenged the entire ballot title, I confine my remarks here to the most serious problem — the ballot title "Summary." The summary is supposed to be "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." ORS 250.035(1)(c). Our review is to determine whether the ballot title substantially complies with that requirement, among others. ORS 250.085(4).

There are times when it is impossible to state with any real certainty the "major effect" of a proposed measure. The measure may be so complex, or its wording so obscure, that any attempt to state a major effect would amount to nothing more than conjecture that potentially would mislead, rather than inform, the voting public. *See, e.g., Kane v. Roberts,* 310 Or 423, 799 P2d 639 (1990) (inappropriate to speculate on effects of adding a "right to privacy" provision to Article I of the Oregon Constitution). On the other hand, a measure may be so clear and straightforward that quoting its provisions *does* state the major effect. *See, e.g., Kane v. Roberts, supra,* 310 Or at 428 (stating principle). But the major effect, or effects, are to be stated *in some way,* so long as there is room within the 85-word limitation. To do less would be to deprive the voters of information that the legislature has directed be given to them.

This is not a case in which the major effect of the proposed measure is so obscure that it would require inappropriate speculation on the part of the Attorney General, or this court, to state what that major effect will be. Neither is this a case in which simply quoting the measure will provide voters with the statement of the measure's major effect that

the statute demands. This is, instead, a case in which it is possible for the Attorney General to determine precisely what the major effect of this proposed measure would be, because the answer to that question has been provided by this court in previous litigation.

In 1990, this court had before it a ballot title proceeding involving an initiative measure for a proposed constitutional amendment (the 1989 measure) that would have added the following sentence to Article II, section 8, of the Oregon Constitution:

> "Notwithstanding Article I, section 8 and Article I, section 26, of this Constitution, the people, as provided in this Constitution, or the Legislative Assembly may enact laws regulating the financing of election campaigns."

Today, this court has before it another initiative measure (the 1991 measure) that would add the following sentence to Article II, section 8, of the Oregon Constitution:

> "The people, as provided in this Constitution, or the Legislative Assembly may enact laws regulating the financing of election campaigns."

No one reasonably could deny that the 1991 measure is derived from the 1989 measure. Indeed, the 1991 measure *is* the last 20 words of the 1989 measure. And, even if the language left room for any lingering doubt, it is erased when one notes that the principal sponsors of the 1991 measure are the same prominent public figures who sponsored the 1989 measure.

The 1989 measure was, and the 1991 measure is, an attempt by a bipartisan group to work a fundamental change in Oregon campaign finance law by overruling, through a constitutional amendment, the effect of this court's decision in *Deras v. Myers,* 272 Or 47, 535 P2d 541 (1975). That decision held, in effect, that limitations on political campaign contributions and spending violate Article I, section 8, of the Oregon Constitution.[1] The 1991 measure is accompanied by a statutory initiative, sponsored by the same persons, that

---

[1] Article I, section 8, of the Oregon Constitution, provides:

"No law shall be passed restraining the free expression of opinion, or restricting the right to speak, write, or print freely on any subject whatever; but every person shall be responsible for the abuse of this right."

imposes campaign contribution limitations that would be unconstitutional under *Deras v. Myers, supra.* The necessary inference from the timing of these companion measures is that the sponsors intend to make the proposed statutory enactment constitutional by changing the constitutional guideposts. Regardless of the merits of such an effort, the public is entitled to know what the major effect would be if the effort succeeds.

The 1989 measure came before this court in *Deras v. Roberts,* 309 Or 250, 785 P2d 1045 (1990). There, this court certified a ballot title to the Secretary of State that contained the following "Summary":

> "SUMMARY:   This measure would amend the state constitution. It would allow the voters and the state legislature to pass laws that place limits on campaign contributions. It would exempt such laws from sections 8 and 26 of the state Bill of Rights. Those sections forbid laws that restrict the rights of the people to speak, write, and print freely; to assemble; and to have access to the state legislature and its members. The state Supreme Court has said that these sections ban limits on campaign contributions."

*Deras v. Roberts, supra,* 309 Or at 260-61. Today, by contrast, we certify to the Secretary of State, without any comment, analysis, or explanation whatever, a "Summary" for the 1991 measure that states only the following:

> "SUMMARY:   This measure would amend the state constitution. The new language would read as follows: 'The people, as provided in this Constitution, or the Legislative Assembly may enact laws regulating the financing of election campaigns.' This language would be added to the section of the state constitution that now allows regulation of elections."

The 1991 ballot title summary does not substantially comply with the statutory requirement that it state the "major effect" of the proposed measure. The 1991 measure before us now is, for all practical purposes, the 1989 measure. The only difference is the deletion from the 1991 version of the express cross-reference to two provisions of the state Bill of Rights in the 1989 version, but those provisions do not need to be referred to in order to be limited by a later-enacted amendment to the Oregon Constitution. *See, e.g., Coalition*

*for Equit. School Fund. v. State of Oregon,* 311 Or 300, 811 P2d 116 (1991) (illustrating principle).

The Attorney General's explanation to the Secretary of State for his choice of simply quoting the measure, as opposed to attempting to identify its major effect, was that the parties who commented on the Attorney General's original proposed ballot title took diametrically opposed positions with respect to what the major effect would be. Their disagreement should not have blinded the Attorney General to the history that I have outlined, particularly in light of the Attorney General's necessary knowledge of our prior decision. The Attorney General has not properly performed the task assigned to him. Unfortunately, the majority chooses not to do the task assigned to it, either. The history and context of the 1991 measure seem to me to permit only one conclusion as to its major effect. Petitioner Hendricks in this case has proposed a modified summary that would state that major effect. I would modify the ballot title accordingly.

I respectfully dissent.

Graber, J., joins in this dissenting opinion.