Argued and submitted June 11, ballot title certified by the Attorney General approved and certified to the Secretary of State July 18, 1991

Stevie REMINGTON,
*Petitioner,*

*v.*

Phil KEISLING,
*Respondent.*

(SC S38125)

815 P2d 209

Leslie M. Roberts, of Josselson, Potter & Roberts, Portland, argued the cause and filed the petition for petitioner.

Michael D. Reynolds, Assistant Solicitor General, Salem, waived appearance on behalf of respondent.

PER CURIAM

## PER CURIAM

This proceeding concerns challenges to a ballot title for a proposed initiative measure. ORS 250.085(1). The ballot title certified by the Attorney General is set forth in the appendix. We have considered the challenges. The ballot title certified by the Attorney General is approved and certified to the Secretary of State. This decision shall become effective pursuant to ORAP 11.30(10).

# APPENDIX

## BALLOT TITLE CERTIFIED
## BY ATTORNEY GENERAL

### LIMITS CONTRIBUTIONS AND SUPPORT TO
### POLITICAL CANDIDATES, PARTIES
### AND COMMITTEES

QUESTION:   Shall law limit amount of contributions and other support to state and local candidates and to political parties and committees?

SUMMARY:   Limits amount of contributions, other support to state, local candidates, political parties and groups. Exempts most news, union and corporate endorsements. Donors may give up to $500 and $1,000, depending on the office, to each candidate each election. Each year donors may give $200 in cash support to each political party or committee, $20,000 for all political gifts. Candidates may not give their campaign funds to others. Provides penalties. Violators labeled in next voters' pamphlet. Some political committee tax credits repealed.

**GILLETTE, J.,** dissenting.

It would be difficult to overstate the far-reaching effects of the legislation proposed by the initiative measure now before us. If the measure is enacted and upheld against constitutional challenge,[1] the face of Oregon campaign financing would be changed utterly. Such a result may or may not be desirable; that evaluation is no part of our task in reviewing ballot titles for proposed initiative measures. But assuring that the public is as informed as possible about the effect of enactment of those proposed initiative measures decidedly is our task — a task that I believe the majority in this case fails to perform. I therefore dissent.

As is true with respect to most long and complicated initiative measures, preparing an appropriate ballot title for the present measure is no small task. The Attorney General's effort is not without merit:

> LIMITS CONTRIBUTIONS AND SUPPORT TO
> POLITICAL CANDIDATES, PARTIES
> AND COMMITTEES

> QUESTION: Shall law limit amount of contributions and other support to state and local candidates and to political parties and committees?

> SUMMARY: Limits amount of contributions, other support to state, local candidates, political parties and groups. Exempts most news, union and corporate endorsements. Donors may give up to $500 and $1,000, depending on the office, to each candidate each election. Each year donors may give $200 in cash support to each political party or committee, $20,000 for all political gifts. Candidates may not give their campaign funds to others. Provides penalties. Violators labeled in next voters' pamphlet. Some political committee tax credits repealed.

Nonetheless, and for the reasons that follow, I believe the "summary" is impermissibly flawed.

ORS 250.035(1)(c) requires that the explanation portion of a ballot title be a "concise and impartial statement

---

[1] *See Hendricks v. Keisling,* 311 Or 483, 486, 815 P2d 207 (1991), in which a majority of this court approves and certifies to the Secretary of State a ballot title for constitutional amendment sponsored by the same persons who are sponsoring this statutory measure.

\* \* \* summarizing the measure and its major effect." The Attorney General's proposed summary states that limits established in the proposed legislation apply to a donation to a "political party or committee," without disclosing how broadly the term "committee" sweeps.

Section 6(2) of the proposed initiative measure provides:

"*A person,* other than a political party committee, *shall not contribute in any calendar year an aggregate amount exceeding $200 to any one political committee* other than a principal campaign committee or a political committee organized exclusively to support or oppose one or more candidates for national or political party office or a measure."

(Emphasis supplied.) "Political committee," as used in section 6(2) of the proposed initiative measure, is defined in section 2 of the proposed initiative measure:

" 'Political committee' means a combination of two or more individuals, or a person other than an individual, the primary or incidental purpose of which is to support or oppose any candidate, measure or political party, and which has received a contribution or made an expenditure for that purpose."[2]

Thus, when the foregoing subsections are read together, one effect of the proposed initiative measure would be to prohibit contributions in excess of $200 by any one person in any calendar year to any "combination of two or more individuals, \* \* \* the \* \* \* incidental purpose of which is to support or oppose any candidate, measure or political party."

Petitioner is the Executive Director of the Oregon chapter of the American Civil Liberties Union (ACLU). Although by no means its primary focus or function, support or opposition of ballot measures has been an incidental purpose of that organization over the years. The present case is illustrative. Neither is the ACLU experience in any sense unique. Recent history tells us that other well-known organizations, both local and national, have participated in election advocacy as incidental to their pursuit of their core goals.

---

[2] This wording is the same as that presently found in ORS 260.005(11). The proposed initiative measure would change the designation of the definition from subsection (11) to subsection (12); it would not otherwise amend the subsection.

Examples include, in addition to the ACLU, the Sierra Club, the Audubon Society, 1000 Friends of Oregon, Oregon Right to Life, Oregonians for Choice, the Oregon Citizens' Alliance, and Oregon Crime Victims United. All of these organizations, I submit, can easily be shown to have made expenditures in excess of $200 to support or oppose a candidate or measure. All, I further submit, are certain to have received contributions in excess of $200 from individuals. The same may confidently be said about future organizations that may — indeed, that *will* — be formed as political alliances to support or oppose governmental action. The range of subject matter concerning which such future alliances could be formed is as broad as the scope of possible future governmental action.

The enactment of the proposed initiative measure will have a profound effect on the ability of the foregoing organizations, and many others, to accept contributions and to advocate positions concerning candidates or measures. Perhaps more importantly, the measure would affect the ability of the individual citizen to maximize the effectiveness of his or her contribution by giving it to an organization that represents a view with which the citizen agrees. I do not suggest that such outcomes are good or bad; that debate fairly is left to the political process. But the fact that there *will be* such outcomes under the proposed initiative measure seems to me to be something that the Attorney General's summary of the measure should state.

Because information that I believe has to be included in the ballot title is not included, I would hold that the summary portion of the proposed ballot title does not contain a "concise and impartial statement * * * summarizing the measure and its major effect," as required by ORS 250.035(1)(c). We do a disservice to a system of which we are supposed to be an integral part when we ignore omissions of this kind.

I respectfully dissent.

Fadeley and Graber, JJ., join in this dissenting opinion.