Argued and submitted February 15, resubmitted April 6, ballot title certified as modified April 14, Myers' petition for reconsideration denied April 28, 1994

Henry KANE,
*Petitioner,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S41020)

Hardy MYERS,
Rev. Erhart L. Bauer, John P. Lee,
Lynda Harrington and Leo Thornton,
*Petitioners,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent,*

*and*

Peter GOODWIN, M.D.,
Barbara Coombs, and Elvin Sinnard,
*Intervenors-Respondents.*

(SC S41022)

Eli D. STUTSMAN,
*Petitioner,*

*v.*

Theodore R. KULONGOSKI,
Attorney General, State of Oregon,
*Respondent.*

(SC S41024)
(Consolidated for Opinion)

871 P2d 993

Henry Kane, petitioner *pro se*, argued the cause and filed a petition.

Richard M. Botteri, Portland, argued the cause and filed a petition for petitioners Myers, Bauer, Lee, Harrington, and Thornton.

Eli D. Stutsman, petitioner *pro se*, argued the cause and filed a petition.

Richard D. Wasserman, Assistant Attorney General, argued the cause and filed the response for respondent. With him on the response were Theodore R. Kulongoski, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Carson, Chief Justice, and Gillette, Van Hoomissen, Fadeley, and Unis, Justices.

GILLETTE, J.

Unis, J., dissented and filed an opinion.

**GILLETTE, J.**

In these original proceedings, consolidated for argument and decision, petitioners make various challenges to a ballot title certified by the Attorney General for a proposed initiative measure. Pursuant to ORS 250.067(1), each of the petitioners submitted to the Secretary of State timely written comments on the earlier, proposed ballot title, and each is entitled to bring these challenges to the certified ballot title. ORS 250.085(2), (5). On review, we modify the ballot title certified by the Attorney General in the particulars set out below.

The proposed initiative measure is entitled "The Oregon Death with Dignity Act." It is a relatively extensive legislative proposal, taking up six pages of mostly single-spaced printing. A copy is appended to this opinion. We note here only certain points concerning the outline and basic thrust of the proposed measure.

The proposed measure creates a statutory regime that permits an adult resident of Oregon, who has been diagnosed as suffering from an incurable and irreversible disease that will, in the reasonable medical judgment of two physicians, cause that person's death within six months, to obtain and take lethal medication. The choice of the incurably ill person must be voluntary and informed, not the product of a psychiatric or psychological disorder or of depression that is impairing the person's judgment. Because the lethal medication must be prescribed by a physician under circumstances that would, under present law, constitute manslaughter in the second degree, a Class B felony, and would also constitute grounds for civil actions against and professional discipline of the physician, the proposed measure makes pertinent changes to present criminal, civil, and administrative law.

The Attorney General certified the following ballot title for the proposed measure:

"ALLOWS PHYSICIAN TO PRESCRIBE LETHAL
DRUGS FOR TERMINALLY ILL ADULTS

"QUESTION:   Shall statute allow terminally ill adult patients voluntary informed choice to obtain physician's prescription for lethal drugs to end life?

"SUMMARY: Adopts statute. Allows terminally ill adult Oregon residents voluntary informed choice to receive physician's prescription for lethal drugs to end life. Applies when physicians predict patient's death within 6 months. Requires:

"— 15-day waiting period;

"— 2 oral, 1 written request;

"— second physician's opinion;

"— counseling if either physician believes patient has mental disorder, impaired judgment from depression.

"Person may withdraw request. Others may attend when drugs taken. Health care providers may opt out, are immune from civil, criminal liability for good faith compliance. Criminal penalties for violations."

ORS 250.035(1) provides:

"The ballot title of any measure to be initiated or referred shall consist of:

"(a) A caption of not more than 10 words which reasonably identifies the subject of the measure;

"(b) A question of not more than 20 words which plainly phrases the chief purpose of the measure so that an affirmative response to the question corresponds to an affirmative vote on the measure; and

"(c) A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

ORS 250.039 requires ballot titles to comply with a minimum standard of readability. Under ORS 250.085(5), this court reviews ballot titles for substantial compliance with ORS 250.035 and 250.039.

Petitioners challenge portions of the Caption, the Question, and the Summary. In addition, some of the petitioners challenge the readability of the measure. We address the parties' arguments in that order.

## THE CAPTION

As noted, ORS 250.035(1)(a) requires a caption of not more than ten words that "reasonably identifies the subject of the measure." All the parties object to various parts of the Attorney General's Caption.

■   Petitioner Stutsman objects to use of the word "lethal" in the certified Caption because, according to petitioner, it is "inflammatory" and "emotionally laden." He prefers the term "life-ending," rather than "lethal." We do not find the Attorney General's choice to be impermissible. "Lethal" may be a blunt word, but it also is readily understood and precise. Our review is only for "substantial compliance" with the requirements of ORS 250.035, not for perfection under it. ORS 250.085(2), (5); *Hand v. Roberts*, 309 Or 430, 433, 788 P2d 446 (1990).

Petitioner Kane contends that the Caption certified by the Attorney General is deficient because: (1) the Caption should use the word "give" rather than "prescribe"; (2) the Caption does not state that the terminally ill person must give informed consent; and (3) the Caption should use the word "medication," rather than "drugs," because "medication" is the word used in the proposed measure. We shall address each of those contentions in turn.

■   First, we reject petitioner Kane's argument that the Caption should use the word "give," rather than "prescribe." "Give" could easily be read by a voter as indicating that the lethal medication would actually be administered by the prescribing physician; that does not appear to be what is contemplated by the proposed measure. Rather, the physician's role is limited to prescribing; the act of taking the prescribed drug is to be that of the terminally ill person.

■   Next, petitioner Kane urges that the Caption should inform the voter that no terminally ill person will have medication prescribed without the person's "consent." That is not, strictly speaking, correct. Instead, what the measure contemplates is a prescription based on the terminally ill person's *request* to receive such a prescription (Sections 2.01, 2.02), which request shall not be honored unless the request is based on an "informed decision" (Section 3.04). An "informed decision" is defined (Section 1.01(7)) as

"a decision by a qualified patient, to request and obtain a prescription to end his or her life in a humane and dignified manner, that is based on an appreciation of the relevant facts and after being fully informed by the attending physician of:

"(a)   his or her medical diagnosis;

"(b)   his or her prognosis;

"(c)   the potential risks associated with taking the medication to be prescribed;

"(d)   the probable result of taking the medication to be prescribed;

"(e)   the feasible alternatives, including, but not limited to, comfort care, hospice care and pain control."

From the foregoing, we conclude that adopting petitioner Kane's proposal in this regard would be misleading, and the Attorney General properly declined to do so.

■     Finally, petitioner Kane argues that the Caption should use the word "medication," rather than "drugs," because the former is the word actually used by the measure and because the word chosen instead carries negative connotations in today's society that the word "medication" does not. We believe that either word would have been a permissible choice. "Drugs" is a synonym for "medication" that is easier to read, *cf. Aughenbaugh v. Roberts*, 309 Or 510, 513-14, 789 P2d 656 (1990) (approving substitution of "beer" for "malt beverages" and "wine" for "alcoholic beverages" in a ballot title), and any negative connotation that might attach to the word "drugs" is substantially alleviated by the use of the words "prescribe" and "prescription" elsewhere in the ballot title.

■     We turn next to the challenges of petitioners Myers, Bauer, Lee, Harrington, and Thornton (hereafter sometimes referred to as "Myers *et al*") concerning the Caption. Those petitioners contend that the certified Caption is deficient because "the main subject of the measure is decriminalizing doctor assisted suicide for terminal patients." Petitioners contend that the certified Caption fails to apprise voters that "the measure will cause a major change in criminal law."

Although we agree with petitioners that the fact that the proposed measure will make significant changes in existing law is something that the voters should be told, we disagree that the Caption is the place to begin bringing that message home. The purpose of the Caption is to identify the "subject" of the measure. We think that, when the proposed measure is read as a whole, it is clear that the "subject" of the measure is a process by which certain categories of terminally

ill adults can obtain the assistance of a physician in prescribing a drug that the terminally ill person can take to end his or her life.

■ Within the narrow, ten-word limitation placed on the caption by ORS 250.035(1)(a), it is not possible to do more than highlight the foregoing subject. In this respect, however, our review of the ballot title as a whole has brought to our attention an inconsistency between the Caption, on the one hand, and the Question and Summary, on the other. The former focuses on what a physician may do; the latter two concentrate on what the terminally ill person may do. In order to make the approach of all three parts of the ballot title consistent, we have reordered the words of the Caption. We certify the following Caption for the proposed measure:

"ALLOWS TERMINALLY ILL ADULTS TO
OBTAIN PRESCRIPTION FOR LETHAL DRUGS"

We turn next to a discussion of the Question to be certified for the proposed measure.

## THE QUESTION

■ ORS 250.035(1)(b) requires a question of not more than 20 words that "plainly phrases the chief purpose of the measure." The chief purpose is "the most significant aim or end which a measure is designed to bring about." *Glerum v. Roberts*, 308 Or 22, 28, 774 P2d 1093 (1989).

Petitioner Stutsman objects to use of the word "lethal" in the Question. That is the same argument that he made with respect to the Caption, and we reject it for the same reason that we stated in our discussion of that portion of the ballot title.

Petitioner Kane contends that the certified Question is deficient because it uses the word "drugs," rather than the word "medication." That is the same argument that he used with respect to the Caption, and we reject it for the reasons stated in our discussion of that portion of the ballot title.

Petitioners Myers *et al* argue that the certified question is deficient because "[t]he chief purpose [of the proposed measure] is clearly to remove criminal sanctions to doctor assisted suicide." This is an overstatement. It undoubtedly is true that one of the objectives of the proposed measure is to

remove criminal sanctions for physician-assisted suicide; none of the other objectives of the measure could be carried out unless that were accomplished. But the fact that a particular part of a legislative enactment is essential to the success of the enactment does not, *a fortiori*, turn that part of the proposed measure into the measure's "chief purpose." As we already have noted, when the proposed measure is read as a whole, it is inescapable that the subject of the measure is a process by which certain categories of terminally ill adults can obtain the assistance of a physician in prescribing a drug that the terminally ill person can take to end his or her life. Reframing that statement in terms of the function of the Question in a ballot title, we think it is equally clear that the chief purpose of the measure is to affirmatively authorize and to create standards for physician-assisted suicide. The Attorney General's certified Question correctly identifies that fact. We do not find these petitioners' objections to the Attorney General's certified Question to be well taken.

We turn next to a consideration of the various petitioners' objections to the Summary in the Attorney General's certified ballot title.

## THE SUMMARY

ORS 250.035(1)(c) requires "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." This larger and more far-ranging portion of the ballot title makes it possible to highlight several features of a proposed measure.

Petitioner Stutsman makes the same argument with respect to the use of the word "lethal" in the Summary that he did concerning its use in the Caption and Question. We reject his argument for the reasons already stated.

Petitioner Kane raises two objections: First, for the reasons already discussed, he objects to the use of the word "drugs" (as opposed to use of the word "medication") in the Summary. For the reasons already discussed, we reject this argument.

Petitioner Kane also objects to the use of the word "predict" (petitioner proposes use of the word "diagnose" or "determine") in the sentence in the Summary that states

that the proposed measure "[a]pplies when physicians predict patient's death within 6 months." Neither the Attorney General's choice nor petitioner Kane's suggested alternative is ideal. The proposed measure does not use the word "predict." On the other hand, use of "diagnose" or "determine" would require the expenditure of precious additional words to spell out what it is that has been diagnosed or determined and, when that was accomplished, would produce a Summary that was less accurate than the present wording.

The foregoing is easily illustrated. Rewriting the sentence to use the word "determine" produces the following: "Applies when physicians determine patient will die within 6 months." Not only does that add an additional word, but it also is less accurate: A "prediction" is just that, *viz.*, a statement about someone's view of a probable outcome. A "determination," on the other hand, implies a measure of certainty on the part of the physician that medical practice does not claim and that the terms of this measure do not demand. "Diagnose" is even less satisfactory — this portion of the Summary is not concerned with the *diagnosis* that a particular person has been found to be terminally ill; rather, it is concerned with the *prognosis* concerning that diagnosed condition. We reject petitioner Kane's arguments.

Petitioners Myers *et al* contend that the Summary is deficient because: (1) it does not "alert the voter to a major criminal law change"; (2) it does not state that the measure does not define Oregon residency; (3) it does not state that a provision for notification of family members concerning a decision of a terminally ill person to take his or her own life is optional, not mandatory; and (4) the use of dashes in place of words within the Summary portrays the proposed measure in a "partial, unfair way." For the reasons that follow, we find two of these contentions to be well taken.

■ Petitioners argue that the abolition of criminal penalties against a complying physician who prescribes a lethal drug for physician-assisted suicide is a "major effect" of the proposed measure that must be included within the Summary. We agree.

At present, assisting another person to take his or her own life is a Class B felony. ORS 163.125 provides in part:

"(1)   Criminal homicide constitutes manslaughter in the second degree when:

"* * * * *

"(b)   A person intentionally causes or aids another person to commit suicide.

"(2)   Manslaughter in the second degree is a Class B felony."

Aiding a suicide presently is subject to a maximum penalty of 10 years in jail and a fine of $200,000. ORS 161.605, 161.625. There is no statutory exemption from the law for physicians. The proposed measure would exempt physicians who comply with the provisions of the proposed measure from prosecution under the foregoing statutes — a privilege not enjoyed by any other Oregonian. That is a sufficiently major change in Oregon law to deserve note in the Summary. As we explain *post*, we believe that it is possible to modify the Attorney General's ballot title Summary to provide that information.

■     Petitioners next attack the Attorney General's Summary on the ground that it "fails to reveal that[,] although the measure limits itself to Oregon residents, residency is not defined." Residency, petitioners point out, is commonly determined on the basis of intent, not duration. *See, e.g.,* *Zimmerman v. Zimmerman,* 175 Or 585, 590, 155 P2d 293 (1945) (so indicating). It follows, petitioners argue, that a person could qualify under the law, even if the person had been in Oregon for only a few days, and "the measure [therefore] opens Oregon to all those seeking doctor assisted suicide." That argument is interesting, but we believe that it would require an inappropriate degree of interpretation of the proposed measure's text for this court even to address, much less answer, petitioners' theoretical point. The Attorney General properly avoided entering into such an interpretational exercise.

■     Petitioners' next point concerns Section 3.05 of the proposed measure, which provides:

"The attending physician shall ask the patient to notify next of kin of his or her request for medication [for ending the person's life] pursuant to this Act. A patient who declines

or is unable to notify next of kin shall not have his or her request denied for that reason."

The Attorney General's Summary makes no mention of this provision, although he acknowledges that the provision is "significant." The Attorney General argues, however, that the other provisions of the proposed measure that are mentioned in his Summary are even more significant. The Attorney General also notes that his Summary does inform the voter that "[o]thers may attend when drugs [are] taken [by the terminally ill person]." That very cryptic information pertains to a separate part of the proposed measure, section 4.01(1), that confers immunity from prosecution on persons present when the terminally ill person administers the lethal drugs to himself or herself. Mention of this fact is no substitute for, and indeed does not appear to be nearly as important as, the next-of-kin notification provision.

We believe that the notification provision is of sufficiently greater importance than other provisions of the proposed measure that are mentioned in the Summary to make failure to mention the notification provision a violation of the requirements of ORS 250.035(1)(c). Other persons, notified of the decision, might persuade the terminally ill person not to take the lethal drugs. Notification also could aid other persons in accepting the imminent loss of the terminally ill person. Voters, we believe, would want to be aware of that provision.

Finally, petitioners attack the use of dashes in the ballot title Summary to set out a series of requirements of the proposed measure. Use of the dashes, petitioners argue, unduly highlights the material with which they are associated and turns the ballot title into a "campaign flyer" advertising the measure, rather than a fair and impartial summary. We need not decide that question, however, because we find the use of dashes in this case to be an ungrammatical distraction. Their deletion yields a more readable summary.[1]

---

[1] Petitioners Myers *et al* also argue that use of dashes, if permissible, is possible only if the dashes are counted as words within the 85-word limit for the Summary prescribed by ORS 250.035(1)(c). We shall address that argument, because it appears likely to arise with some frequency. The argument is based on a misreading of OAR 165-14-060(2), which requires that "symbols [used in a ballot title] that are surrounded

It follows from the foregoing discussion that some modifications must be made in the Summary of the proposed measure. We revise the Attorney General's Summary for the ballot title for the proposed measure in the following particulars (new material is in **bold**; deleted material is [*italicized and in brackets*]):

"SUMMARY: Adopts statute. Allows terminally ill adult Oregon residents voluntary informed choice to receive physician's prescription for lethal drugs to end life. **Removes criminal penalties for qualifying physician-assisted suicide.** Applies when physicians predict patient's death within 6 months. Requires:

"[−] 15-day waiting period;

"[−] 2 oral, 1 written request;

"[−] second physician's opinion;

"[−] counseling if either physician believes patient has mental disorder, impaired judgment from depression.

"Person **has choice whether to notify next of kin** [*may withdraw request*]. [*Others may attend when drugs taken.*] Health care providers [*may opt out, are*] immune from civil, criminal liability for good faith compliance. [*Criminal penalties for violations.*]"

The foregoing changes place information in the Summary about the exemption from existing criminal penalties applicable to physicians who assist in a suicide; they also prominently mention both the fact that the next of kin, if any, may or may not be notified and the fact that the decision in that regard is the choice of the terminally ill person. In order to insert that information, other information has to be sacrificed. We believe that the fact that a request for lethal drugs could be withdrawn is so likely to be inferred that it does not need to be stated specifically. We have already explained why the right of others to attend when the lethal drugs are taken is not, in context, as important as other provisions of the proposed measure. We have deleted reference to the specific

---

by white space" shall be counted as words. We think that it is most reasonable to read the reference to "symbols" in the rule as a reference to devices, such as an ampersand or dollar sign, that have an independent linguistic content. By contrast, the dashes used in the present ballot title are place holders, *i.e.*, punctuation, with no independent linguistic content. Petitioners' argument in that regard is not well taken.

right of health care providers to "opt out" of the statutory scheme, because it appeared to us that that provision, while doubtless important to health care providers themselves, is not so important to the general public as to justify its inclusion at the expense of other information. Finally, we have deleted the reference in the Attorney General's Summary to criminal penalties for violations of the proposed measure, because that information seems to contradict information already in the measure and further complicates understanding of the important addition that we have made about the exemption from criminal penalties for complying physicians.

## READABILITY

■ Finally, petitioners Myers *et al* contend that a more readable ballot title is possible without sacrificing the needs of impartiality, conciseness, and accuracy. It certainly is true that the present ballot title is difficult to read. But this court long has recognized that the readability standard of ORS 250.039 is not an absolute one, but instead must yield to the requirements of impartiality, conciseness, and accuracy under ORS 250.035(1). *See, e.g, Deras v. Roberts*, 309 Or 410, 420, 788 P2d 987 (1990) (illustrating principle). Accuracy here has required the use of many multi-syllabic words, preventing greater readability. Moreover, the alternative proposed by petitioners omits so many pertinent provisions of the proposed measure, and gives such inappropriate prominence to others, as to make it of no help whatsoever in fashioning a more readable ballot title. Even without help, it is possible to make a few changes. For example, "law" may be substituted for "statute" in both the Question and Summary. "Lethal" also may be omitted from both the Question and Summary — as noted, its use complies with the requirements of ORS 250.034, but its omission also is permissible because use of the phrase "to end life" makes it redundant. Absent more help from petitioners, we decline to attempt further editing of this ballot title.

The ballot title certified to the Secretary of State by the Attorney General is modified. We certify to the Secretary of State the following ballot title:

ALLOWS TERMINALLY ILL ADULTS TO
OBTAIN PRESCRIPTION FOR LETHAL DRUGS

QUESTION: Shall law allow terminally ill adult patients voluntary informed choice to obtain physician's prescription for drugs to end life?

SUMMARY: Adopts law. Allows terminally ill adult Oregon residents voluntary informed choice to obtain physician's prescription for drugs to end life. Removes criminal penalties for qualifying physician-assisted suicide. Applies when physicians predict patient's death within 6 months. Requires:

15-day waiting period;

2 oral, 1 written request;

second physician's opinion;

counseling if either physician believes patient has mental disorder, impaired judgment from depression.

Person has choice whether to notify next of kin. Health care providers immune from civil, criminal liability for good faith compliance.

Ballot title certified as modified. This decision shall become effective pursuant to ORAP 11.30(9).

**UNIS, J.,** dissenting.

Because I believe that the ballot title certified by the Attorney General to the Secretary of State substantially complies with the statutory requirements, ORS 250.035; ORS 250.039, I would certify the ballot title certified by the Attorney General. Moreover, I am concerned that the ballot title now certified by the court departs in some respects from the arguments made by the parties. That part of the court's decision may return one day to haunt us.

# Appendix

# THE OREGON
# DEATH WITH DIGNITY ACT

## SECTION I
## GENERAL PROVISIONS

### § 1.01 DEFINITIONS

The following words and phrases, whenever used in this Act, shall have the following meanings:

(1) "Adult" means an individual who is 18 years of age or older.

(2) "Attending physician" means the physician who has primary responsibility for the care of the patient and treatment of the patient's terminal disease.

(3) "Consulting physician" means a physician who is qualified by specialty or experience to make a professional diagnosis and prognosis regarding the patient's disease.

(4) "Counseling" means a consultation between a state licensed psychiatrist or psychologist and a patient for the purpose of determining whether the patient is suffering from a psychiatric or psychological disorder, or depression causing impaired judgment.

(5) "Health care provider" means a person licensed, certified, or otherwise authorized or permitted by the law of this State to administer health care in the ordinary course of business or practice of a profession, and includes a health care facility.

(6) "Incapable" means that in the opinion of a court or in the opinion of the patient's attending physician or consulting physician, a patient lacks the ability to make and communicate health care decisions to health care providers, including communication through persons familiar with the patient's manner of communicating if those persons are available. Capable means not incapable.

(7) "Informed decision" means a decision by a qualified patient, to request and obtain a prescription to end his or her life in a humane and dignified manner, that is based on an appreciation of the relevant facts and after being fully informed by the attending physician of:

    (a) his or her medical diagnosis;

    (b) his or her prognosis;

    (c) the potential risks associated with taking the medication to be prescribed;

    (d) the probable result of taking the medication to be prescribed;

    (e) the feasible alternatives, including, but not limited to, comfort care, hospice care and pain control.

(8) "Medically confirmed" means the medical opinion of the attending physician has been confirmed by a consulting physician who has examined the patient and the patient's relevant medical records.

(9) "Patient" means a person who is under the care of a physician.

(10) "Physician" means a doctor of medicine or osteopathy licensed to practice medicine by the Board of Medical Examiners for the State of Oregon.

(11) "Qualified patient" means a capable adult who is a resident of Oregon and has satisfied the requirements of this Act in order to obtain a prescription for medication to end his or her life in a humane and dignified manner.

(12) "Terminal disease" means an incurable and irreversible disease that has been medically confirmed and will, within reasonable medical judgment, produce death within six (6) months.

## SECTION 2
## WRITTEN REQUEST FOR MEDICATION TO END ONE'S LIFE IN A HUMANE AND DIGNIFIED MANNER

### § 2.01 WHO MAY INITIATE A WRITTEN REQUEST FOR MEDICATION

An adult who is capable, is a resident of Oregon, and has been determined by the attending physician and consulting physician to be suffering from a terminal disease, and who has voluntarily expressed his or her wish to die, may make a written request for medication for the purpose of ending his or her life in a humane and dignified manner in accordance with this Act.

### § 2.02 FORM OF THE WRITTEN REQUEST

(1) A valid request for medication under this Act shall be in substantially the form described in Section 6 of this Act, signed and dated by the patient and witnessed by at least two individuals who, in the presence of the patient, attest that to the best of their knowledge and belief the patient is capable, acting voluntarily, and is not being coerced to sign the request.

(2) One of the witnesses shall be a person who is not:

(a) A relative of the patient by blood, marriage or adoption;

(b) A person who at the time the request is signed would be entitled to any portion of the estate of the qualified patient upon death under any will or by operation of law; or

(c) An owner, operator or employee of a health care facility where the qualified patient is receiving medical treatment or is a resident.

(3) The patient's attending physician at the time the request is signed shall not be a witness.

(4) If the patient is a patient in a long term care facility at the time the written request is made, one of the witnesses shall be an individual designated by the facility and having the qualifications specified by the Department of Human Resources by rule.

## SECTION 3
## SAFEGUARDS

### § 3.01 ATTENDING PHYSICIAN RESPONSIBILITIES

The attending physician shall:

(1) Make the initial determination of whether a patient has a terminal disease, is capable, and has made the request voluntarily;

(2) Inform the patient of:

(a) his or her medical diagnosis;

(b) his or her prognosis;

(c) the potential risks associated with taking the medication to be prescribed;

(d) the probable result of taking the medication to be prescribed;

(e) the feasible alternatives, including, but not limited to, comfort care, hospice care and pain control.

(3) Refer the patient to a consulting physician for medical confirmation of the diagnosis, and for a determination that the patient is capable and acting voluntarily;

(4) Refer the patient for counseling if appropriate pursuant to Section 3.03;

(5) Request that the patient notify next of kin;

(6) Inform the patient that he or she has an opportunity to rescind the request at any time and in any manner, and offer the patient an opportunity to rescind at the end of the 15 day waiting period pursuant to Section 3.06;

(7) Verify, immediately prior to writing the prescription for medication under this Act, that the patient is making an informed decision;

(8) Fulfill the medical record documentation requirements of Section 3.09;

(9) Ensure that all appropriate steps are carried out in accordance with this Act prior to writing a prescription for medication to enable a qualified patient to end his or her life in a humane and dignified manner.

## § 3.02 CONSULTING PHYSICIAN CONFIRMATION

Before a patient is qualified under this Act, a consulting physician shall examine the patient and his or her relevant medical records and confirm, in writing, the attending physician's diagnosis that the patient is suffering from a terminal disease, and verify that the patient is capable, is acting voluntarily and has made an informed decision.

## § 3.03 COUNSELING REFERRAL

If in the opinion of the attending physician or the consulting physician a patient may be suffering from a psychiatric or psychological disorder, or depression causing impaired judgment, either physician shall refer the patient for counseling. No medication to end a patient's life in a humane and dignified manner shall be prescribed until the person performing the counseling determines that the patient is not suffering from a psychiatric or psychological disorder, or depression causing impaired judgment.

## § 3.04 INFORMED DECISION

No person shall receive a prescription for medication to end his or her life in a humane and dignified manner unless he or she has made an informed decision as defined in Section 1.01(7). Immediately prior to writing a prescription for medication under this Act, the attending physician shall verify that the patient is making an informed decision.

## § 3.05 FAMILY NOTIFICATION

The attending physician shall ask the patient to notify next of kin of his or her request for medication pursuant to this Act. A patient who declines or is unable to notify next of kin shall not have his or her request denied for that reason.

## § 3.06 WRITTEN AND ORAL REQUESTS

In order to receive a prescription for medication to end his or her life in a humane and dignified manner, a qualified patient shall have made an oral request and a written request, and reiterate the oral request to his or her attending physician no less than fifteen (15) days after making the initial oral request. At the time the qualified patient makes his or her second oral request, the attending physician shall offer the patient an opportunity to rescind the request.

## § 3.07 RIGHT TO RESCIND REQUEST

A patient may rescind his or her request at any time and in any manner without regard to his or her mental state. No prescription for medication under this Act may be written without the attending physician offering the qualified patient an opportunity to rescind the request.

### § 3.08 WAITING PERIODS

No less than fifteen (15) days shall elapse between the patient's initial oral request and the writing of a prescription under this Act. No less than 48 hours shall elapse between the patient's written request and the writing of a prescription under this Act.

### § 3.09 MEDICAL RECORD DOCUMENTATION REQUIREMENTS

The following shall be documented or filed in the patient's medical record:

(1) All oral requests by a patient for medication to end his or her life in a humane and dignified manner;

(2) All written requests by a patient for medication to end his or her life in a humane and dignified manner;

(3) The attending physician's diagnosis and prognosis, determination that the patient is capable, acting voluntarily and has made an informed decision;

(4) The consulting physician's diagnosis and prognosis, and verification that the patient is capable, acting voluntarily and has made an informed decision;

(5) A report of the outcome and determinations made during counseling, if performed;

(6) The attending physician's offer to the patient to rescind his or her request at the time of the patient's second oral request pursuant to Section 3.06; and

(7) A note by the attending physician indicating that all requirements under this Act have been met and indicating the steps taken to carry out the request, including a notation of the medication prescribed.

### § 3.10 RESIDENCY REQUIREMENT

Only requests made by Oregon residents, under this Act, shall be granted.

### § 3.11 REPORTING REQUIREMENTS

(1) The Health Division shall annually review a sample of records maintained pursuant to this Act.

(2) The Health Division shall make rules to facilitate the collection of information regarding compliance with this Act. The information collected shall not be a public record and may not be made available for inspection by the public.

(3) The Health Division shall generate and make available to the public an annual statistical report of information collected under Section 3.11(2) of this Act.

### § 3.12 EFFECT ON CONSTRUCTION OF WILLS, CONTRACTS AND STATUTES

(1) No provision in a contract, will or other agreement, whether written or oral, to the extent the provision would affect whether a person may make or rescind a request for medication to end his or her life in a humane and dignified manner, shall be valid.

(2) No obligation owing under any currently existing contract shall be conditioned or affected by the making or rescinding of a request, by a person, for medication to end his or her life in a humane and dignified manner.

### § 3.13 INSURANCE OR ANNUITY POLICIES

The sale, procurement, or issuance of any life, health, or accident insurance or annuity policy or the rate charged for any policy shall not be conditioned upon or affected by the making or rescinding of a request, by a person, for medication to end his or her life in a humane and dignified manner. Neither shall a qualified patient's act of ingesting medication to end his or her life in a humane and dignified manner have an effect upon a life, health, or accident insurance or annuity policy.

### § 3.14 CONSTRUCTION OF ACT

Nothing in this Act shall be construed to authorize a physician or any other person to end a patient's life by lethal injection, mercy killing or active euthanasia. Actions taken in accordance with this Act shall not, for any purpose, constitute suicide, assisted suicide, mercy killing or homicide, under the law.

## SECTION 4
## IMMUNITIES AND LIABILITIES

### § 4.01 IMMUNITIES

Except as provided in Section 4.02:

(1) No person shall be subject to civil or criminal liability or professional disciplinary action for participating in good faith compliance with this Act. This includes being present when a qualified patient takes the prescribed medication to end his or her life in a humane and dignified manner.

(2) No professional organization or association, or health care provider, may subject a person to censure, discipline, suspension, loss of license, loss of privileges, loss of membership or other penalty for participating or refusing to participate in good faith compliance with this Act.

(3) No request by a patient for or provision by an attending physician of medication in good faith compliance with the provisions of this Act shall constitute neglect for any purpose of law or provide the sole basis for the appointment of a guardian or conservator.

(4) No health care provider shall be under any duty, whether by contract, by statute or by any other legal requirement to participate in the provision to a qualified patient of medication to end his or her life in a humane and dignified manner. If a health care provider is unable or unwilling to carry out a patient's request under this Act, and the patient transfers his or her care to a new health care provider, the prior health care provider shall transfer, upon request, a copy of the patient's relevant medical records to the new health care provider.

### § 4.02 LIABILITIES

(1) A person who without authorization of the patient willfully alters or forges a request for medication or conceals or destroys a rescission of that request with the intent or effect of causing the patient's death shall be guilty of a Class A felony.

(2) A person who coerces or exerts undue influence on a patient to request medication for the purpose of ending the patient's life, or to destroy a rescission of such a request, shall be guilty of a Class A felony.

(3) Nothing in this Act limits further liability for civil damages resulting from other negligent conduct or intentional misconduct by any person.

(4) The penalties in this Act do not preclude criminal penalties applicable under other law for conduct which is inconsistent with the provisions of this Act.

## SECTION 5
## SEVERABILITY

### § 5.01 SEVERABILITY

Any section of this Act being held invalid as to any person or circumstance shall not affect the application of any other section of this Act which can be given full effect without the invalid section or application

## SECTION 6
## FORM OF THE REQUEST

### § 6.01 FORM OF THE REQUEST

A request for a medication as authorized by this act shall be in substantially the following form:

---

### REQUEST FOR MEDICATION
### TO END MY LIFE IN A HUMANE AND DIGNIFIED MANNER

I, _____, am an adult of sound mind.

I am suffering from _____, which my attending physician has determined is a terminal disease and which has been medically confirmed by a consulting physician.

I have been fully informed of my diagnosis, prognosis, the nature of medication to be prescribed and potential associated risks, the expected result, and the feasible alternatives, including comfort care, hospice care and pain control.

I request that my attending physician prescribe medication that will end my life in a humane and dignified manner.

INITIAL ONE:

____ I have informed my family of my decision and taken their opinions into consideration.

____ I have decided not to inform my family of my decision.

____ I have no family to inform of my decision.

I understand that I have the right to rescind this request at any time.

I understand the full import of this request and I expect to die when I take the medication to be prescribed.

I make this request voluntarily and without reservation, and I accept full moral responsibility for my actions.

Signed: _____

Dated: _____

### DECLARATION OF WITNESSES

We declare that the person signing this request:

(a) Is personally known to us or has provided proof of identity;

(b) Signed this request in our presence;

(c) Appears to be of sound mind and not under duress, fraud or undue influence;

(d) Is not a patient for whom either of us is attending physician.

_____Witness 1/Date

_____Witness 2/Date

NOTE: One witness shall not be a relative (by blood, marriage or adoption) of the person signing this request, shall not be entitled to any portion of the person's estate upon death and shall not own, operate or be employed at a health care facility where the person is a patient or resident. If the patient is an inpatient at a health care facility, one of the witnesses shall be an individual designated by the facility.

---