Argued and submitted August 26, ballot title certified September 2, 1997

## N. Gregory HAMILTON, M.D.,
## Kenneth Stevens, M.D., Speaker Lynn Lundquist,
## Rep. Lynn Snodgrass, and Rep. Ron Sunseri,
*Petitioners,*

*v.*

## Hardy MYERS,
## Attorney General, State of Oregon
*Respondent.*

## Peter GOODWIN, M.D.,
## Barbara Coombs Lee, Esq.,
## and Elven Sinnard,
*Petitioners,*

*v.*

## Hardy MYERS,
## Attorney General for the State of Oregon,
*Respondent.*

(SC S44434, S44454)
(Consolidated for Argument and Opinion)

943 P2d 214

Richard M. Botteri, of Preston Gates & Ellis LLP, Portland, argued the cause and filed the petition for petitioners N. Gregory Hamilton, M.D., *et al.* With him on the petition was Kelly Cole Zerzan.

Eli D. Stutsman, Portland, argued the cause and filed the petition for petitioners Peter Goodwin, M.D., *et al.*

David Schuman, Deputy Attorney General, and Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With them on the answering memoranda was Virginia L. Linder, Solicitor General.

GILLETTE, J.

## GILLETTE, J.

These are consolidated proceedings for review of a ballot title that the Attorney General has certified to the Secretary of State for a measure that the 1997 Legislative Assembly has referred to the people. That measure, designated by the Secretary of State as "Measure 51," would, if enacted, repeal ORS 127.800 to 127.897, the "Oregon Death with Dignity Act." That Act (hereafter sometimes referred to as "Measure 16") was itself adopted by the people at the November 1994 general election but, due to various court proceedings, never has gone into effect. Petitioners[1] are electors who filed timely written comments with respect to various aspects of the ballot title as it originally was proposed by the Attorney General and who now are entitled to maintain these proceedings. *See* ORS 250.085(2) (establishing the foregoing criteria for standing to challenge ballot titles certified by the Attorney General).

Pursuant to ORS 250.067(2), the Attorney General has certified to the Secretary of State the following ballot title for the referred measure:

"REPEALS LAW ALLOWING TERMINALLY ILL ADULTS TO OBTAIN LETHAL PRESCRIPTION

"RESULTS OF 'YES' VOTE: 'Yes' vote repeals law allowing terminally ill adults to obtain physician's prescription for lethal drugs.

"RESULTS OF 'NO' VOTE: 'No' vote retains law allowing terminally ill adults to obtain physician's prescription for lethal drugs.

"SUMMARY: Repeals Measure 16, adopted by voters in 1994. That law:

---

[1] There are two petitions for review of the ballot title and two sets of petitioners. In case S44434, the petitioners, referred to hereafter as "Hamilton *et al*," are Hamilton and Stevens, who are physicians, and Lundquist, Snodgrass, and Sunseri, who are members of the Legislative Assembly. In case S44454, the petitioners, referred to hereafter as "Goodwin *et al*," are Goodwin, a physician, Lee, a lawyer and nurse, and Sinnard. The latter set of petitioners were the principal sponsors of Measure 16.

"Allows terminally ill adult Oregon residents voluntary informed choice to obtain physician's prescription for lethal drugs when physicians predict patient's death within 6 months;

"Requires 15-day waiting period; 2 oral, 1 written request; second physician's opinion; counseling for patients with impaired judgment from depression;

"Gives health care providers immunity from civil, criminal liability for good faith compliance.

"Permits person choice whether to notify next of kin.

"Allows health care providers to refuse to participate."

■ This court reviews ballot titles certified by the Attorney General to determine whether such titles comply substantially with the requirements of ORS 250.035(2).[2] ORS 250.085(5). Before turning to those requirements, however, we first must address a procedural point raised by petitioners Hamilton *et al*.

Petitioners Hamilton *et al* argue to this court, as a preliminary matter, that the Attorney General was precluded from preparing a ballot title for the proposed measure, because the Legislative Assembly had itself prepared a ballot title for the measure. *See* ORS 250.075(1) (providing that, "[w]hen the Legislative Assembly refers a measure to the people, a ballot title for the measure *may* be prepared by the assembly") (emphasis added). It follows, they argue, that the Attorney General had no authority to prepare a separate, substitute ballot title. *See* ORS 250.075(2) (providing that, "[i]f the [ballot] title is *not* prepared under subsection (1) of [ORS 250.075]," the Attorney General shall prepare a ballot title for the referred measure) (emphasis added). From the foregoing, petitioners reason that this court is precluded from reviewing the Attorney General's ballot title, because that ballot title is not eligible to be placed on the ballot at all in any form, *i.e.*, is a nullity.

Petitioners acknowledge that A-Engrossed House Bill 3502 (1997 session), the bill that purported to create the

---

[2] The specific requirements for a ballot title under ORS 250.035(2) are identified and discussed later in this opinion.

legislature's suggested ballot title, was vetoed by the Governor. They assert, however, that the gubernatorial veto also was a nullity, because the Governor is without power to veto legislative bills that are referred to the people. Because this latter theory is pivotal to petitioners' argument, we turn to it.

It is true, as petitioners state, that the Governor does not have the power to veto bills referred to the people by the Legislative Assembly. Oregon Constitution, Article IV, section 1(3)(c).[3] But A-Engrossed House Bill 3502 (1997 session) itself was not, by its own terms, a referred bill. Instead, it was a direction to the Secretary of State to use the election machinery of state government to place before the voters a particular ballot title for a referred bill that had been created in a separate bill, A-Engrossed House Bill 2954 (1997 session). As such, A-Engrossed House Bill 3502 (1997 session) was not, as the constitution specifies, a "bill[ ] ordering a referendum" or a "bill[ ] on which a referendum is ordered" but was, instead, a bill like any other bill for an Act: It could become law only if a majority of each house of the Legislative Assembly concurred in it, Or Const, Art IV, § 25, *and* if it was not vetoed by the Governor, Or Const, Art V, § 15b. In the case of A-Engrossed House Bill 3502 (1997 session), however, the Governor chose to exercise his veto power under Oregon Constitution, Article V, section 15b. A-Engrossed House Bill 3502 (1997 session) thus never became law. As of this date, the Legislative Assembly has not overridden his veto pursuant to Oregon Constitution, Article V, section 156(2).

No ballot title having been created by the Legislative Assembly for Measure 51 (*i.e.*, A-Engrossed House Bill 3502 (1997 session) never having become an Act), it fell to the Attorney General to create a ballot title. ORS 250.075(2). The Attorney General did so. The present proceedings are validly before this court. We turn to the merits of the arguments presented by the various petitioners.

---

[3] Oregon Constitution, Article IV, section 1(3)(c), provides:

"A referendum on an Act may be ordered by the Legislative Assembly by law. Notwithstanding section 15b, Article V of this Constitution, bills ordering a referendum and bills on which a referendum is ordered are not subject to veto by the Governor."

As noted, this court reviews ballot titles for "substantial compliance" with the statutory requirements in ORS 250.035. ORS 250.085(5). ORS 250.035(2) provides:

"The ballot title of any state measure to be initiated or referred shall consist of:

"(a)   A caption of not more than 10 words that reasonably identifies the subject matter of the state measure. * * *;

"(b)   A simple and understandable statement of not more than 15 words that describes the result if the state measure is approved. * * *;

"(c)   A simple and understandable statement of not more than 15 words that describes the result if the state measure is rejected. * * *;

"(d)   A concise and impartial statement of not more than 85 words summarizing the measure and its major effect."

Petitioners Goodwin *et al* and Hamilton *et al* mount separate challenges to the Caption, Result Statements, and Summary of the certified ballot title. We address each of the three sections of the ballot title in order.

## THE CAPTION

■       Petitioners Goodwin *et al* argue that the Caption of the certified ballot title fails to "reasonably identify the subject matter" of Measure 51, as required by ORS 250.035(2)(a), because, instead of focusing on the present measure, it relies too heavily on the ballot title wording certified in 1994 for the then-proposed Measure 16. Specifically, they argue that the subject matter of Measure 51 would be more readily identifiable if the Caption were to refer, by name and year of passage, to the law that Measure 51 proposes to repeal. They propose a Caption stating: "REPEALS DEATH WITH DIGNITY ACT PASSED BY VOTERS IN 1994."

That argument is not well taken. Assuming that the foregoing would be a permissible Caption, nothing in petitioners' argument demonstrates how the Attorney General's alternative choice for the Caption, *viz.*, "REPEALS LAW ALLOWING TERMINALLY ILL ADULTS TO OBTAIN

LETHAL PRESCRIPTION," fails to meet the standard imposed by ORS 250.035(2)(a). The certified Caption reasonably identifies the subject matter of Measure 51 by referring to the content of the corresponding law that it seeks to repeal, using wording previously approved by this court to describe the subject matter. *See Kane v. Kulongoski*, 318 Or 593, 871 P2d 993 (1994) (issuing certified ballot title for the 1994 initiative; certified Caption read: "ALLOWS TERMINALLY ILL ADULTS TO OBTAIN PRESCRIPTION FOR LETHAL DRUGS").

For similar reasons, the arguments of petitioners Hamilton *et al* with respect to the Caption fail. They argue that the certified Caption is inadequate, because it leaves out any reference to "drugs" as the medium through which lethal prescriptions may be made under the law, in favor of adding the term "adult." They propose that this court substitute the Caption that the legislature proposed in HB 3502 (1997). That Caption states: "REPEALS LAW ALLOWING PRESCRIPTION OF LETHAL DRUGS TO TERMINALLY ILL." By including the term "drugs," petitioners assert, this Caption includes what they deem to be the "most significant" aspect of the law that Measure 51 seeks to repeal, *i.e.*, the right of a physician to write a prescription for lethal drugs.

Petitioners' argument is only an assertion that their preferred wording would be "better" than that used by the Attorney General. That is no basis for this court to hold that the Attorney General's choice is legally insufficient. Moreover, inserting the word "drug" necessarily would require removing the word "adult," in order to meet the 10-word limit on captions. ORS 250.035(2)(a). The gain would not offset the loss: The concept of "drugs" is implied in the word "prescription." On the other hand, removing the word "adult" would deprive the voters of crucial information about *who* may seek a lethal prescription.

Petitioners have not established that the certified Caption fails to comply substantially with the requirements of ORS 250.035(2)(a).

### THE RESULT STATEMENTS

The Attorney General's certified ballot title contains the following Result Statements:

"RESULTS OF 'YES' VOTE: 'Yes' vote repeals law allowing terminally ill adults to obtain physician's prescription for lethal drugs.

"RESULTS OF 'NO' VOTE: 'No' vote retains law allowing terminally ill adults to obtain physician's prescription for lethal drugs."

Petitioners Goodwin *et al* argue, as they did with respect to the Caption, that the Result Statements would be more "simple and understandable," ORS 250.035(2)(b) and (c), if they clearly identified the existing law that Measure 51 seeks to repeal. We reject petitioners' arguments for the same reason expressed earlier concerning petitioners' similar argument with respect to the Caption.

Petitioners Hamilton *et al* argue for the following Result Statements:

"RESULT OF 'YES' VOTE: 'Yes' vote repeals law allowing prescription of lethal drugs for adults diagnosed as terminally ill.

"RESULT OF 'NO' VOTE: 'No' vote retains law allowing prescription of lethal drugs for adults diagnosed as terminally ill."

Petitioners' proposed Result Statements are those that the legislature proposed in HB 3502 (1997 session).

These petitioners assert that the most significant feature of the existing law is that it removes criminal penalties for physicians who prescribe lethal drugs to the terminally ill. Therefore, they reason, their proposed Result Statements properly shift the focus from the choice that the law provides to terminally ill adults to what the law allows physicians to do. Petitioners offer one way to look at the existing law, but their argument fails to show why the certified ballot title, which roughly parallels the 1994 ballot title for Measure 16, does not comply substantially with the requirements of ORS 250.035(2)(b) and (c). Moreover, by maintaining the same focus as the Caption, the certified Result Statements are in accord with this court's case law endorsing internal consistency in ballot titles. *See Mabon v. Keisling*, 317 Or

406, 414, 856 P2d 1023, (1993) (Question—statutory predecessor to the Result Statements—should build on and be consistent with the Caption); *Kane*, 318 Or at 600 (rewording Caption to make it consistent with the Question and Summary).

## THE SUMMARY

■     The Summary must contain "[a] concise and impartial statement of not more than 85 words summarizing the measure and its major effect." ORS 250.035(2)(d). In addition to urging that the use of the phrase, "Oregon Death with Dignity Law," in the Summary is essential—an argument that we reject for the reason already stated—petitioners Goodwin *et al* challenge certain wording of the certified Summary. They argue that the phrase, "Repeals Measure 16, adopted by voters in 1994," is misleading and biased, because the "Death With Dignity Act" no longer is merely a "measure" but, instead, has been transformed into a "law" by the vote of the people. The voters, petitioners assert, are entitled to know that Measure 51 seeks to repeal an existing law.

The Attorney General's certified Summary, althoughit begins with a reference to "Measure 16," almost immediately thereafter refers to that measure as "[t]hat *law*." (Emphasis added.) That reference is sufficient, we conclude, to convey to the voters the fact that they are dealing with an existing law.

Petitioners Hamilton *et al* reject the entire Summary certified by the Attorney General. They first argue that the certified Summary is unfair, because it informs the voters that Measure 51 would repeal a measure that passed in 1994, thereby making a "political statement" that "encourag[es] voters to vote against Measure 51." We are not persuaded. We agree with the Attorney General that telling the voters what year the existing law passed is one permissibly useful, neutral method of helping to identify the existing law.

As a fallback position, petitioners argue that the voters at least also deserve to be told that the 1994 initiative passed by a "slim" margin and that the legislature referred the law back to the voters because of its "flaws." Neither of those suggestions is well taken. The margin of passage of

Measure 16 is a matter for argument, not for inclusion in an impartial Summary. Still less is it appropriate for a Summary to take sides with respect to a measure by announcing that, in the opinion of some members of the Legislative Assembly, the measure has "flaws."

Petitioners Hamilton *et al* next argue that the certified Summary is inadequate, because it improperly focuses on what the 1994 law does, rather than on the "major effect" of Measure 51. The major effect of Measure 51, petitioners assert, is simply to repeal a law; no more needs to be said. They offer the following Summary:

> "SUMMARY: This measure repeals the law that allows terminally ill adults to obtain physician's prescription to commit physician-assisted suicide."

That proposed Summary is the one proposed by the legislature in HB 3502 (1997 session).

Petitioners' proposed Summary makes no effort to inform the voters of the features of the existing law—opting to explain only one part (the repeal) of a two-part story (existing law). Even if that would be a permissible way to draw a ballot title in these circumstances—an issue that we need not and do not address—petitioners have offered no persuasive explanation as to why the Attorney General's decision to tell both parts of the story fails to comply with the statutory directive to include a Summary containing an impartial statement summarizing the measure's major effect. ORS 250.035(2)(d).

Petitioners Hamilton *et al* argue next that the use of the term "residents" in the Summary is improper, because that term is not defined. This court certified a similar use of the term in *Kane*, the ballot title review case for the 1994 initiative (Measure 16). Petitioners fail even to address, much less explain, why the *Kane* court erred in using that term.

Petitioners Hamilton *et al* rely on federal cases in an attempt to illustrate what they consider to be deficiencies in the certified Summary. They argue first that the reference in the Summary to the standard for criminal and civil immunity is improper, because it has been held unconstitutional. *See Lee v. State of OR*, 891 F Supp 1421 (D Or 1995); *Lee v. State*

*of OR*, 891 F Supp 1429 (D Or 1995) (both so holding). However, the *Lee* cases were vacated by the Ninth Circuit. *Lee v. OR*, 107 F3d 1382 (9th Cir 1997). Moreover, and whether or not vacated, such cases have no *precedential* authority.

Petitioners Hamilton *et al* also challenge the use in the Summary of the phrase, "voluntary informed choice," citing the United States Supreme Court's expressed skepticism of such "safeguards" in *Washington v. Glucksberg*, ____ US ____ , 117 S Ct 2258, 138 L Ed 2d 772 (1997). *Glucksberg* is not helpful to the present proceeding. That case addressed the issue of a terminally ill adult's right, under the United States Constitution, to commit physician-assisted suicide, in jurisdictions in which such an act had been declared criminal. *Glucksberg* does not change the content or meaning of Oregon's existing law.

We conclude that the Attorney General's Summary substantially complies with the requirements of law.

In conclusion, we hold that the ballot title certified by the Attorney General to the Secretary of State is not legally deficient in any respect urged by any of the petitioners before us. Accordingly, we certify the following ballot title for Measure 51:

REPEALS LAW ALLOWING TERMINALLY ILL
ADULTS TO OBTAIN LETHAL PRESCRIPTION

RESULTS OF "YES" VOTE:   "Yes" vote repeals law allowing terminally ill adults to obtain physician's prescription for lethal drugs.

RESULTS OF "NO" VOTE:   "No" vote retains law allowing terminally ill adults to obtain physician's prescription for lethal drugs.

SUMMARY:   Repeals Measure 16, adopted by voters in 1994. That law:

Allows terminally ill adult Oregon residents voluntary informed choice to obtain physician's prescription for lethal drugs when physicians predict patient's death within 6 months;

Requires 15-day waiting period; 2 oral, 1 written request; second physician's opinion; counseling for patients with impaired judgment from depression;

Gives health care providers immunity from civil, criminal liability for good faith compliance.

Permits person choice whether to notify next of kin.

Allows health care providers to refuse to participate.

Ballot title certified. Pursuant to ORAP 1.20(4) and notwithstanding ORAP 11.30(10), this opinion will become effective when the appellate judgment issues. The State Court Administrator shall issue the appellate judgment at 4:00 p.m. on September 5, 1997, unless a petition for reconsideration is both filed with and physically received by the Office of the State Court Administrator by that time. A timely petition for reconsideration will stay issuance of the appellate judgment until the court acts on all timely petitions for reconsideration.