Argued and submitted November 7, ballot title certified December 11, 1997

## Bill SIZEMORE,
*Petitioner,*

*v.*

## Hardy MYERS,
Attorney General,
State of Oregon
*Respondent.*

(SC S44531)

950 P2d 314

Gregory W. Byrne, Portland, argued the cause and filed the petition for petitioner.

Richard D. Wasserman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the answering memorandum were Hardy Myers, Attorney General, and Virginia Linder, Solicitor General, Salem.

CARSON, C. J.

## CARSON, C. J.

This is an original ballot title proceeding, in which petitioner challenges the ballot title for a proposed initiative measure. Petitioner is a dissatisfied elector who submitted timely written comments to the Secretary of State about the draft ballot title prepared by the Attorney General. ORS 250.067(1) and (2). After considering petitioner's and other comments, the Attorney General revised his draft ballot title and certified the title quoted below. Petitioner now seeks a different ballot title, challenging the result statements and the summary of the certified ballot title.[1] As we shall explain, we conclude that the Attorney General's certified ballot title substantially complies with the requirements of ORS 250.035(2). *See* ORS 250.085(5) (establishing this court's standard of review). Accordingly, we certify the Attorney General's ballot title.

The proposed measure, entitled "Spending Limit Act of 1998," is rather lengthy, but requires only a brief summary here. The measure would amend the Oregon Constitution by adding 17 sections to Article XI-A and by renaming Article XI-A as "Limits on Government Revenue and Spending." The measure would limit the revenue of state and local governments, including school districts, to each entity's highest total revenue in either of the two fiscal years ending before the effective date of the amendment, adjusted annually for inflation and population. The measure also would limit annual spending by state and local governments, including school districts, to the sum of the respective entity's: (1) revenue limit for the year in question, including annual adjustments for inflation and population; (2) actual receipts that are excluded from the definition of revenue under the measure; and (3) net unspent funds, if any, carried over from the preceding year.

Additional provisions in the proposed measure relate, among other things, to future changes in the revenue

---

[1] Petitioner's objections concerning the result statements relate, for the most part, to his earlier written comments to the Secretary of State, and his objections concerning the summary relate only to wording added to the ballot title after the statutory comment period expired. *See* ORS 250.085(6) (providing for Supreme Court review in those circumstances). *See also* 326 Or at 148 n 2 (discussing petitioner's failure to preserve a particular challenge to the certified "no" statement).

and spending limits, subject to electoral vote, to temporary exceptions from the revenue and spending limits to pay for jails and prisons, and to the funding of employee retirement and benefit plans. Under the measure, any taxpayer or citizen has standing to sue to enforce its provisions, and reasonable attorney fees and legal expenses must be awarded to successful plaintiffs.

After considering written comments concerning the draft ballot title, the Attorney General certified the following ballot title for the proposed measure:

"AMENDS CONSTITUTION: LIMITS STATE, LOCAL GOVERNMENT, AND SCHOOL DISTRICT REVENUE AND SPENDING

"RESULT OF 'YES' VOTE: 'Yes' vote limits state, local government, school district revenue and spending, and growth of each.

"RESULT OF 'NO' VOTE: 'No' vote retains statutory state spending limit, rejects constitutional state, local government revenue, spending limits.

"SUMMARY: Amends constitution. Limits state, local government, school district revenue. Beginning limit is highest revenue in one of last two fiscal years. Limit adjusted annually for inflation, population growth. Voters may temporarily raise limit by 2/3 vote, permanently reduce limit by majority vote. Limits spending to revenue limit, plus excluded receipts, unspent funds carried over. Allows temporary spending outside limit for jails, prisons. Government employee retirement, benefit plans must be fully funded with real assets within 20 years. Authorizes lawsuits, automatic attorney fees for prevailing citizen."

As noted, petitioner challenges the result statements and the summary of the certified title, but not the caption.

■ The "result of a 'yes' vote" statement must contain "[a] simple and understandable statement of not more than 15 words that describes the result if the * * * measure is approved." ORS 250.035(2)(b). Petitioner contends that, because the Attorney General's "yes" statement essentially reiterates the wording contained in the caption, it does not inform the voters about the result if the measure is approved.

Petitioner further argues that the "yes" statement "avoids mentioning the measure's chief effect, which * * * is to limit government spending to the sum of the rates of inflation and [population] growth." Petitioner suggests an alternative "yes" statement that focuses upon the specific future limits upon government revenue and spending contained in the measure.

■ We are not persuaded by petitioner's contentions. First, the Attorney General's "yes" statement accurately describes the result if this proposed measure is approved. The measure would impose a threshold limit upon government revenue and spending, as well as a limit upon annual increases in revenue and spending. Petitioner's suggested "yes" statement inappropriately focuses upon only the latter type of limit. In contrast, the Attorney General's certified "yes" statement refers to both the threshold and the growth limits contained in the proposed measure. Second, we note that this court has endorsed the Attorney General's use of consistent wording in the caption and the corresponding result statements. *See Hamilton v. Myers*, 326 Or 44, 52-53, 943 P2d 214 (1997) (court approved result statements maintaining the same focus as the caption, as "in accord with this court's case law endorsing internal consistency in ballot titles"), and cases cited therein.

Petitioner also contends that the average voter might think that the phrase "and growth of each" in the certified "yes" statement modifies the phrase "state, local government [and] school district[s]," instead of the "revenue and spending" of those entities. We disagree. In our view, when the entire statement is read in full, the phrase "and growth of each" clearly modifies the words "revenue and spending."

■ Petitioner next challenges the "result of a 'no' vote" statement, which must contain "[a] simple and understandable statement of not more than 15 words that describes the result if the * * * measure is rejected." ORS 250.035(2)(c). Petitioner first contends that the certified "no" statement is not simple and understandable, because it includes the phrase "retains statutory state spending limit," which does not appear in the certified "yes" statement. In petitioner's view, voters might think that a "yes" vote would repeal the

statutory state spending limit, which the proposed measure does not mention. He further contends that the lack of similarity between the "yes" and "no" statements violates ORS 250.035(3), which provides that result statements "shall be written so that, to the extent practical, the language of the two statements is parallel."

The Attorney General responds that, if approved, the proposed measure would repeal ORS 291.355, which limits growth of appropriation for general governmental purposes in a manner that is inconsistent with the limits contained in the proposed measure. Therefore, in the Attorney General's view, it is appropriate to mention the statutory limit in the "no" statement.

We agree with the Attorney General that petitioner's argument does not demonstrate that the certified "no" statement fails to comply substantially with ORS 250.035(2)(c) and (3). The Attorney General has chosen to inform the voters that an existing statute already imposes certain limits upon governmental spending and, if the proposed measure is rejected, that statute will remain in effect. That is a permissible choice. *See Mannix v. Kulongoski*, 323 Or 485, 489, 492, 918 P2d 839 (1996) (court certified a "no" statement that described the current state of the law); *see also generally Bernard v. Keisling*, 317 Or 591, 596, 858 P2d 1309 (1993) ("The law does not require that the certified ballot title use only the words that appear in the measure itself. The overriding requirement is that the ballot title substantially comply with the requirements of ORS 250.035.").

■     Petitioner also objects to the word "statutory" in the certified "no" statement, contending that it is "legal jargon" that is not simple and understandable. We reject that argument, because the word "statutory" is not obscure, and it accurately distinguishes the existing spending limits contained in ORS 291.355 from the proposed constitutional limits contained in the proposed measure.[2]

---

[2] Petitioner further contends that, because the certified "yes" statement specifically mentions school districts while the "no" statement does not, voters might think that a "no" vote would reject spending limits for state and local governments, but not for school districts. Petitioner did not raise that argument during the comment period, and, consequently, we do not consider it here. *See* ORS 250.085(6) (limiting the scope of this court's review).

■     Finally, petitioner challenges the last sentence of the certified summary, which states: "Authorizes lawsuits, automatic attorney fees for prevailing citizen." Petitioner contends that the word "automatic" is misleading because, under the proposed measure, prevailing citizens who appear *pro se* could not recover attorney fees. He also notes that defending governmental entities may recover attorney fees for frivolous litigation under the measure. For those reasons, in petitioner's view, the award of "attorney fees" under the measure is not necessarily "automatic." Finally, petitioner argues that a reference to "automatic" attorney fees is likely to inflame voters who are antagonistic toward lawyers.

We reject petitioner's contentions concerning the certified summary. The purpose of the summary is to "summariz[e] the measure and its major effect." ORS 250.035-(2)(d). Section 15 of the proposed measure provides that a taxpayer or citizen who successfully sues to enforce the provisions of the measure "*shall be* reimbursed for all reasonable attorney fees and expenses of the lawsuit" (emphasis added) and that "[a] government entity shall not collect attorney fees or expenses from a citizen under this section unless the lawsuit filed by the citizen is ruled to be frivolous." As noted, the certified summary states that attorney fees are "automatic" for prevailing citizens.

Petitioner's arguments do not persuade us that the certified summary fails to comply substantially with ORS 250.035(2)(d). Under Section 15 of the proposed measure, a citizen must both hire an attorney[3] and prevail against a governmental entity, in order to collect attorney fees. In referring to "automatic *attorney* fees for *prevailing* citizen[s]" (emphasis added), the final sentence of the certified summary accurately summarizes that provision. In addition, the final sentence in the summary does not preclude the fact that attorney fees also may be available to governmental entities in some circumstances. Finally, petitioner's contention that a reference to "automatic" attorney fees is inflammatory is a matter of opinion, and, in our view, the Attorney General's

---

[3] The phrase "attorney fees," as used in the proposed measure, necessarily implies that an attorney has been hired.

wording is not so inflammatory that it amounts to misleading the voters about the content of the proposed measure.

After considering all petitioner's contentions, we conclude that the Attorney General's certified ballot title substantially complies with the requirements set forth in ORS 250.035(2). Accordingly, we certify the ballot title without modification.

Ballot title certified. This decision shall become effective in accordance with ORAP 11.30(10).